## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DANIEL M. MILLER,

        Plaintiff,

v.

FACEBOOK, INC.; and YAO WEI YEO,

        Defendants.

Case No.  1:09-CV-2810-RLV

**FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE**

Defendant Facebook, Inc. ("Facebook") hereby files this Reply Brief in support of its Motion to Transfer Venue.  Plaintiff's Opposition fails to raise any facts or legal precedent that would disturb the parties' contractual agreement to litigate this matter in the Northern District of California.  Plaintiff does not dispute that he agreed to a forum selection clause requiring that any "dispute about or involving the [Facebook] Web site and/or the Service" be litigated in California.  Nor does Plaintiff meaningfully argue that the parties' forum selection clause is unenforceable; the Opposition contains no case law or even argument supporting that position.  Instead, Plaintiff claims that the forum provision should not apply because his lawsuit against Facebook is not "directly or indirectly" "about or involving" the Facebook website or service.  This is wrong.  Courts in similar circumstances have repeatedly rejected these arguments and enforced online forum selection clauses, many using the exact language presented here.  Further, transfer

- 1 -

Dockets.Justia.com

would be proper even without reference to the parties' contract. Though Plaintiff argues that the traditional transfer factors neither favor nor disfavor transfer, he arrives at this conclusion by ignoring the second defendant in this case, who appears to reside in California. For these and other reasons outlined below, the Court should decline to disturb the parties' forum selection clause and transfer this matter to its rightful venue in California.

## I.     FACTS

Plaintiff does not dispute that:

- Plaintiff agreed to Facebook's Terms of Use ("TOU") on February 12, 2006. *See* Plaintiff's Opposition To Facebook's Motion To Transfer Venue (Dkt. No. 15) (herein cited as "Opp. Brief") at pp. 1-2;

- in agreeing to the TOU, Mr. Miller agreed to the forum selection clause contained therein. *Id*.;

- the TOU contained a forum selection clause by which Mr. Miller agreed that "the courts of the state and federal courts of Santa Clara County, California" would have "exclusive jurisdiction and venue" over any "dispute about or involving the [Facebook]Web Site and/or the [Facebook] Service." *Id*.

In an attempt to avoid the contractual terms he assented to, Miller paints himself as a poor student facing a social networking giant. But he conveniently ignores that he uses Facebook to promote his *Boomshine* game, his "K2xL" company and its website, and at least one other game. Plaintiff and/or his licensees developed, published and distributed *Boomshine* on the Facebook website, where it

still remains.  *See* Declaration of Julio C. Avalos In Support of Facebook's Reply Brief ("Avalos Decl."), ¶¶ 2-3  *Id*. Ex. A.

Miller has recently taken advantage of Facebook's website to develop and promote a derivative work of *Boomshine* called *Obechi*.  *Id*. ¶ 4, Ex. B.  Notably, when Miller published *Obechi* last year he, once again, agreed to Facebook's Developer Terms of Service ("DTOS").   The DTOS states, "Your use of the Facebook Platform, including the Facebook Properties, is subject to this Agreement, and also to the Facebook Site Terms of Use, the Facebook Platform Documentation and the Facebook Platform Application Guidelines, each of which is incorporated into this Agreement by this reference."  *Id*. ¶ 5 Ex. C.

Thus, Miller's claim that his assent to the TOU can only relate to use of his personal account does not help him because Miller used his personal account to promote Boomshine, Obechi and his commercial website K2xL.com.  *Id*. Exs. A, B, and F.   Accordingly, Miller has affirmatively acknowledged his assent to Facebook's TOU and the forum selection clause contained therein on at least two occasions, both of which relate directly to the development and publishing of the *Boomshine* game and his business on the Facebook website.

OHS West:260803423.7

## II.   ARGUMENT

### A.   The Forum Selection Clause Is Legally Enforceable

Plaintiff does not meaningfully argue that the forum selection clause agreed to by the parties is legally unenforceable.  His brief contains no law or analysis supporting that position. Instead, Plaintiff makes much of the fact that Facebook's TOU is an "adhesion contract."  Opp. Brief pp. 1-3.  This argument is a red herring.  It is by now hornbook law that forum selection clauses in adhesion contracts are enforceable.

### 1.   Forum Selection Clauses Found In Adhesion Contracts Are Enforceable

In the leading case on the issue, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-95 (1991), the Supreme Court enforced a forum selection clause printed in small print on the back of a cruise ship ticket.  The Court noted that public policy favors such clauses.  Because the nature of the cruise ship business necessarily opened the defendant-company to the possibility of litigation in several fora, the cruise line had a justifiable "interest in limiting the fora in which it potentially could be subject to suit."  *Id*. at 593.  The Court reasoned that without such clauses, firms would likely have to increase prices for their customers to account for the higher cost of litigation.  *Id*.

The present case falls squarely within the *Carnival* precedent.  Facebook is a

- 4 -

global website, with over 350 million users around the world.  As such, it too has a

legitimate and cognizable "interest in limiting the fora in which it potentially could

be subject to suit."  Failure to transfer this case may establish dangerous precedent

not only as to the continuing viability of forum selection clauses for Internet

companies, but for conventional multijurisdictional businesses as well.  Such

businesses would no doubt be forced to charge more for their products and services

to account for increased litigation costs incurred litigating in hundreds of

jurisdictions around the country.

*Carnival*'s applicability remains undiminished in an online context.  As

summarized in one of the nation's leading opinions on Internet forum selection

clauses:

> While new commerce on the Internet has exposed courts
> to many new situations, it has not fundamentally changed
> the principles of contract.  It is standard contract doctrine
> that when a benefit is offered subject to stated conditions,
> and the offeree makes a decision to take the benefit with
> knowledge of the terms of the offer, the taking
> constitutes an acceptance of the terms, which accordingly
> become binding on the offeree.

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004).  Accordingly,

not only have courts repeatedly enforced Facebook's TOU, they have enforced

online forum selection or choice of law clauses containing the exact "about or

involving" language at issue here.  *See e.g.*, *Facebook, Inc. v. ConnectU LLC, et*

*al.*, 489 F. Supp. 2d 1087, 1090-91 (N.D. Cal. 2007) (enforcing Facebook's TOU)

OHS West:260803423.7

and *Facebook, Inc. v. Wallace*, No. C 09-798 JF, 2009 U.S. Dist. LEXIS 107771 (N.D. Cal. Oct. 29, 2009) (same).

For example, in *Woodruff v. Anastasia Int'l, Inc.*, No. E2007-00874-COA-R3-CV, 2007 Tenn. App. LEXIS 781, *11-12 (Ct. App. Tn. Dec. 19, 2007), plaintiff, a customer of defendant Anastasia's mail-order-bride service, "accepted Anastasia's terms of service for its online services by means of a click-through agreement on Anastasia's Web site." *Id*. at *3. Defendant argued that Tennessee was not the proper venue for Plaintiff's causes of action because a forum selection clause in the click-through agreement required that all litigation "about or involving the Web site and/or the Service" "be initiated in the state or federal courts of Frankfurt, Kentucky." *Id*. at *11. Relying on *Carnival*, the Court of Appeals agreed with Defendant and enforced the forum selection provision:

> After careful consideration, we find nothing in the Contracts which is beyond the reasonable expectation of an ordinary person. While a customer such as Plaintiff would prefer not to have to litigate disputes with [Defendant] in a distant state, it is reasonable to expect that a corporation that has customers in many states may want to limit where it is subject to suit . . . The fact that a resident of Tennessee or any other state other than Kentucky or Maine would prefer to sue in his home state rather than in Kentucky or Maine does not, by itself, make the forum selection clause oppressive or unconscionable. Our acceptance of Plaintiff's position would be to hold that every forum selection clause between a corporation and a Tennessee resident would be unenforceable, at the sole option of the Tennessee resident, if the forum selected is one other than Tennessee. Such is not the law in this state.

- 6 -

*Id*. at *13-14.  *Woodruff* is on all fours with the case at hand and dictates transfer. Other cases featuring the "about or involving" language are in accord. *See*, *e.g.*, *United States of America v. Drew*, No. CR 08-0582-GW, 2009 U.S. Dist. LEXIS 85780, at * (C.D. Cal. Aug. 28, 2009); *Riggs v. MySpace, Inc.*, No. 3:2008-247, 2009 U.S. Dist. LEXIS 37109, at *3-4, *9-10 (W.D. Pa. May 5, 2009) (granting transfer of case from Pennsylvania to the Central District of California under identical terms).

### 2.     The Forum Selection Clause Is Not "Wholly Ambiguous"

Plaintiff next argues that "[i]f construed strictly against Facebook, such a provision [the forum selection clause] must be interpreted to mean that any disputes between the user and Facebook *about the service provided by Facebook* must be litigated in a California court."  Opp. Brief at p. 3 (emphasis in original). This argument is meritless.  First, as demonstrated above, Courts have found nothing ambiguous in these terms before.  Second, Plaintiff's interpretation is based on an express misreading of the clause.  The forum selection clause does not state that "any dispute about the Web site and/or the Service" must be litigated in California; it states that "any dispute about *or involving* the Web site and/or the Service" must be.  Plaintiff's desire to ignore the word "involving" is unsurprising;

- 7 -

there can be no question that this case at the very least "involves" the Facebook site. *See also* following section, II.B.[1]

### B. The Forum Selection Clause Applies To Plaintiff's Claims

In order to argue that his claims are not "directly or indirectly" "about or involving" the Facebook website, Plaintiff seeks to confuse the Court by focusing only on his personal use of the Facebook website. But, as noted above, Plaintiff uses Facebook to promote his claimed work, his "K2xL" company and its website, and at least one other game. Avalos Decl. ¶¶ 2-3. Moreover, Plaintiff's Complaint centers entirely around Facebook.

For instance, Plaintiff alleges that Defendant Yeo "[a]t least as early as April, 2009 . . . published the game *ChainRxn* on a website hosted by Defendant Facebook [www.facebook.com]." Complaint ¶ 15. By Plaintiff's own admission, the alleged harm to his trademark rights in his *Boomshine* video game occurred exclusively among Facebook users. *Id.* ¶ 18 ("After Defendant Yeo published *ChainRxn* on Defendant Facebook's website, members of the public were deceived regarding the origin of *ChainRxn*."). Plaintiff's presumed theory of vicarious or contributory liability against Facebook is premised on the allegation that

---

[1] Plaintiff's belief that a broad contract term necessarily implies an ambiguous one is without legal support. To the contrary, it is a basic legal and linguistic truism that a word may be broad but not ambiguous. *See, e.g., Mattheis v. Heritage Mutual Ins. Co.*, 169 Wis. 2d 716 (Ct. App. 1992) (word "customer" broad but not

OHS West:260803423.7

"Defendant Facebook provides advertisements on the webpage that hosts the *ChainRxn* game," i.e., a Facebook webpage, *Id.* ¶ 19.

Further, Plaintiff alleges that "[o]n May 7, 2009, Plaintiff sent a letter to Defendant Facebook demanding that Facebook remove *ChainRxn* from its website because it violates Plaintiff's copyrighted *Boomshine*." *Id.* ¶ 20.  In addition to this letter, Plaintiff also reached out to Facebook in his capacity as a Facebook user to report Mr. Yeo's alleged infringement and exchanged email messages regarding *ChainRxn* with a member of Facebook's User Operations team.  Avalos Decl. ¶¶ 6-7; Ex. D.  Following these conversations and Plaintiff's letter to Facebook, Plaintiff alleges that "[d]espite the demands by Plaintiff that Defendants [Yeo and Facebook] remove *ChainRxn* from the Facebook website, they have refused to do so."  Compl. ¶ 23.

In light of these allegations, Plaintiff's argument that "this action is not about a dispute over the service provided by Facebook to Mr. Miller as a user of the Facebook website" is incoherent.  Opp. Brief at p. 3.[2]  Miller has repeatedly used his personal Facebook account and the Facebook website to develop and

---

ambiguous); *Shanks v. Blue Cross & Blue Shield United*, 777 F. Supp. 1444 (E.D. Wis. 1991) (word "treatment" broad, but not ambiguous).

[2] Again, it must be noted that Mr. Miller purposefully omits the word "involving" from his recitation of the forum selection clause.  *See* Opp. Brief at p. 3.  The proper question before the Court is whether Plaintiff's allegations "directly or indirectly" are "about or involve" the Facebook website.  They plainly are.

- 9 -

promote *Boomshine* and his business. *See* Avalos Decl. Exs. A, B and F. Undeniably, Miller's claims are "about or involving" Facebook's website and services.

"In this Circuit," forum selection provisions are "given a broad interpretation." *Advantica, Inc. v. Environmental Pipeline Rehabilitation, Inc.*, No. 5:05-CV-91, 2006 U.S. Dist. LEXIS 97141, at *6 (S.D. Ga. July 31, 2006) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) ("*Stewart I*"). As the *Advantica* court noted, "[i]n the wake of *Stewart I*, the district courts of this Circuit have interpreted forum selection clauses to encompass a broad range of claims." *Id*. at *7 (citations omitted); *accord Universal Grading Service, et al. v. eBay, Inc.*, No. 08-CV-3557, 2009 U.S. Dist. LEXIS 49841, at *50-51 (E.D.N.Y. Jun. 9, 2009) ("*eBay*").

This case is analytically identical to the recent *eBay* decision. There, plaintiffs made an inapplicability objection virtually identical to Mr. Miller's, arguing that their antitrust claims (which alleged that eBay and others had conspired to restrain trade) and trade libel claims (which alleged that eBay had issued defamatory press releases) did not arise out of their use of eBay's services and were thus not subject to the forum selection clause. *Id*. at *50-53. Relying on the public policy favoring their use as well as the "expansive reading" that such

- 10 -

clauses should be given, the court easily found that "one can only find" that plaintiff's claims were subject to the forum selection clause. The Court should rule similarly here.

### C.     Analysis of the Remaining Section 1404(a) Factors Favors Transfer

The Supreme Court has held that in a Section 1404(a) analysis, a "valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). This case is not exceptional. In fact, Plaintiff concedes that "[t]he majority of the [Section 1404(a)] factors do not favor the defendant or the plaintiff." Opp. Brief at p. 5. But even this concession is wrong; the factors favor transfer.

For instance, it is not true that "[t]he convenience of the witnesses and parties does not favor either the Plaintiff or the Defendant." *Id.* Plaintiff's use of the singular "Defendant" is telling—as he repeatedly does throughout his Opposition, Plaintiff once again seeks to gloss over the fact that there is another Defendant in this case—indeed, the main actor in Plaintiff's Complaint—who appears to reside in California. *See* Dkt. No. 13 ¶ 3. Two of this case's three parties reside in California, meaning that the convenience of the parties would be aided by transferring the case to California. Importantly, Plaintiff continues to

ignore the fact that as an individual student or developer apparently residing and working in California, Mr. Yeo is likely not subject to personal jurisdiction in Georgia.  Plaintiff's Opposition does not dispute this.  Should Plaintiff be required to litigate his case in California, all parties—including Mr. Yeo—would be subject to personal jurisdiction there.

   With respect to the convenience of the witnesses in this case, Plaintiff fails even to intimate, let alone identify, what possible witnesses he requires that are currently residing in Georgia.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer.").

   Similarly, Plaintiff is incorrect that "the locus of operative facts, location of documents, and the forum's familiarity with governing law do not favor either party."  Opp. Brief at p. 6.  As the Federal Circuit recently observed in an important venue transfer decision involving allegations of intellectual property infringement, the bulk of the evidence in such cases is located where the alleged infringer is located.  *See In re Genentech, Inc.*, 566 F.3d at 1345 ("[T]he bulk of the relevant evidence usually comes from the accused infringer. Consequently, the

- 12 -

place where the defendant's documents are kept weighs in favor of transfer to that location.").  The crux of this case will revolve around how Mr. Yeo developed his competing video game, whether he knew about *Boomshine*, had access to *Boomshine*, and/or copied all or part of that game.  All this evidence will reside wherever Mr. Yeo was, which is apparently California. *See* Dkt. No. 13 ¶ 3.

Mr. Miller would like to characterize himself as a mere Georgia college student and paint Facebook as a "large corporation with immense means."  Opp. Brief at p. 6.  According to Plaintiff, "[t]his difference in resources weighs enough by itself to warrant the denial of Facebook's motion."  *Id*. at p. 6-7.  Plaintiff provides no legal support for this statement, nor has he introduced any evidence, even in the form of a declaration or affidavit, relating to his financial means.  In reality, as shown above, far from being a mere student, Mr. Miller has for years developed, promoted, and licensed commercial video games on the Internet <u>and through Facebook</u>.  And Mr. Miller again ignores the other, principal defendant in this case, Mr. Yeo, who really does appear to be a recent college graduate hardly of "immense means" who would be forced to travel from California to Georgia to litigate this case.

OHS West:260803423.7

Even were the Court not to enforce the parties' unambiguous and binding forum selection clause, the majority of the Section 1404(a) factors still militate in favor of transfer.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Facebook respectfully requests that the Court follow the clear precedent before it, decline to disturb the parties' forum selection clause, and transfer this matter to its rightful venue in California, the location of two of this case's three parties.

(Signature Block to Follow)

OHS West:260803423.7

Dated:     January 7, 2010          Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

/s/Thomas J. Gray

Thomas J. Gray (*admitted pro hac vice*)

4 Park Plaza, Suite 1600
Irvine, CA 92614-2558
Tel: (949) 567-6700
tgray@orrick.com

Julio C. Avalos (*admitted pro hac vice*)
1000 Marsh Road
Menlo Park, CA 94025-1015
Tel: (650) 614-7400
javalos@orrick.com


**MORRIS, MANNING & MARTIN, LLP**

/s/Jason P. Wright

Jason P. Wright
Georgia Bar No. 778280
W. Andrew McNeil
Georgia Bar No. 498636

1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
Tel: (404) 233-700
jwright@mmmlaw.com
amcneil@mmmlaw.com

*Attorneys for Defendant Facebook, Inc..*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1D, the undersigned counsel certifies that the foregoing has

been prepared in Times New Roman 14 point, one of the four fonts and points

approved by the Court in LR 5.1C.


/s/Jason P. Wright

Jason P. Wright
Georgia Bar No. 778280

OHS West:260803423.7

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2010, I electronically filed FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

HENINGER GARRISON DAVIS, LLC

Douglas L. Bridges
Georgia Bar No. 080889
Glenlake Parkway, Suite 700
Atlanta, GA 30328
Tel: (678) 638-6309
Fax: (678) 638-6201
dbridges@hgdlawfirm.com

Brian D. Hancock
AL Bar No.: ASB-0874-B65H
TN Bar No.: 022827
2224-1st North Avenue
Birmingham, AL 35203
Tel:   205-326-3336
Fax:   205-326-3332
bdhancock@hgdlawfirm.com

*Attorneys for Plaintiff Daniel M. Miller*

By:   _/s/Jason P. Wright

Jason P. Wright
Georgia Bar No. 778280

- 17 -