Lenore Silverman, SBN 146112
lsilverman@fagenfriedman.com
Kimberly A. Smith, SBN 176659
ksmith@fagenfriedman.com
FAGEN FRIEDMAN & FULFROST, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Phone: 323-330-6300
Fax: 323-330-6311

Attorneys for Defendant, SAN FRANCISCO
UNIFIED SCHOOL DISTRICT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| A.B., a minor, By and Through W.F.B., His Guardian Ad Litem,<br><br>        Plaintiff,<br><br>    vs.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT,<br><br>        Defendant. | CASE NO. C 07-4738 (PJH)<br><br>**DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 25, 2008<br>Time: 9:00 a.m.<br>Crtrm.: 3 |

/ / /

/ / /

/ / /

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

00239.00115/72836.1                                        C 07-4738 (PJH)

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.   ALJ JOHNSON'S OPINION THOROUGHLY AND PROPERLY ANALYZES THE EVIDENCE TO DETERMINE WHETHER PLAINTIFF WAS DENIED A FAPE.................................................................................................................1

II.  THE ALJ CORRECTLY HELD THAT CLAIMS RELATED TO PLAINTIFF'S MARCH 2004 IEP ARE BARRED BY THE STATUTE OF LIMITATIONS...................3

III. THE ALJ PROPERLY CONCLUDED THAT PROCEDURAL VIOLATIONS WHICH DO NOT RESULT IN A DENIAL OF FAPE CONSTITUTE HARMLESS ERROR.................................................................................................4

    A.  Plaintiff's Mother Was Presented the Continuing Opportunity to Meaningfully Participate in Her Son's Education ....................................5

    B.  There is No Evidence that Plaintiff Suffered Loss of Educational Opportunity.................................................................................7

IV.  THE ALJ CORRECTLY CONCLUDED THAT THE DISTRICT EITHER MADE A CLEAR WRITTEN OFFER OF PLACEMENT FOR PLAINTIFF'S ESY PROGRAMS OR THE FAILURE TO DO SO WAS HARMLESS ERROR.....................8

V.   THE ALJ CORRECTLY CONCLUDED THAT THE DISTRICT PROVIDED PRIOR WRITTEN NOTICE WITH RESPECT TO PLAINTIFF'S ESY PROGRAMS OR THE FAILURE TO DO SO WAS HARMLESS ERROR...................10

VI.  OTHER THAN AS FOUND BY ALJ JOHNSON, THE DISTRICT DID NOT FAIL TO ASSESS PLAINTIFF IN ANY AREAS OF SUSPECTED DISABILITY........11

    A.  Functional Behavioral Assessment .................................................11

    B.  Neuropsychological or Psycho-educational Assessments.....................14

    C.  Speech, Language and Social Skills Assessments...............................14

    D.  Occupational Therapy Assessment ................................................15

    E.  Auditory Processing Assessment ...................................................16

VII. THE ALJ PROPERLY CONCLUDED THAT THE DISTRICT ADEQUATELY DEVELOPED GOALS TO PROVIDE PLAINTIFF WITH A FAPE.............................17

    A.  Detailed Baseline Data Was Included in Each IEP,.............................17

    B.  Plaintiff's Goals Were Measureable. ..............................................20

VIII. THE ALJ PROPERLY CONCLUDED THAT THE DISTRICT PROVIDED PLAINTIFF WITH THE APPROPRIATE PROGRAM AND SERVICES TO CONSTITUTE A FAPE .................................................................................21

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

A.     Dr. Vincent Nunno's Assessment Did Not Require a Change in Plaintiff's Program or Services. ........................................................................................22

B.     Dr. Tina Guterman's Assessment Did Not Require a Change in Plaintiff's Program or Services. ........................................................................................23

IX.     THE ALJ ACTED WELL WITHIN HER BROAD DISCRETION TO GRANT OR DENY RELIEF BASED ON THE EQUITIES IN DENYING REIMBURSEMENT FOR SUMMER QUEST CAMP AND OTHER SUPPLEMENTAL SERVICES.............24

X.     CONCLUSION ........................................................................................25

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

CASES

*Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999) ........................................4

*Alan H. v. Hawaii,* 2007 WL 2790738 (D.Hawai'i September 24, 2007) ........................................2

*Amanda J. v. Clark County Sch. Dist.,* 267 F.2d 877 (9th Cir. 2001)............................ 4, 5, 12, 13

*B.B. v. Hawaii Dept. of Educ.,* 483 F.Supp. 1042 (D. Hawai'i 2006) ........................................ 17, 18

*Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley ("Rowley"),*
   458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)....................................... 1, 4, 5, 6, 21

*Bend-Lapine Sch. Dist. v. K.H.,* 2005 WL 1587241 (D.Or. 2005) ........................................20

*B.R. v. San Ramon Valley Unif. Sch. Dist.*, 2007 WL 72632 (N.D.Cal. January 25, 2007)...........17

*Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884 (9th Cir. 1995)................................1-2

*Clyde K. v. Puyllup Sch. Dist. No. 3,* 35 F.3d 1396 (9th Cir. 1994) ........................................4

*County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458 (9th Cir. 1996)..............1

*Doe by and through Doe v. Smith,* 879 F.2d 1340 (6th Cir. 1989) ........................................1

*E.P. v. San Ramon Valley Unified Sch. Dist.,* 2007 WL 1795747 (N.D.Cal. 2007)......................6

*Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993)..... 22, 24

*French v. Omaha Public Schools,* 766 F.Supp. 765 (Neb. 1991)............................................ 17, 18

*Fuhrmann v. East Hanover Bd. of Educ.,* 993 F.22d 1031 (3rd Cir. 1993) ................................6

*Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307 (9th Cir. 1987)..........................................1

*Independent Sch. Dist. No. 23 v. Minnesota Dept. of Educ.,* 2007 WL 2774337
   (Minn.App. 2007)........................................................................................................1

*In re Riverside-Linden Inv. Co.,* 945 F.2d 320 (9th Cir. 1991) ............................................7

*J.P. ex rel. Peterson v. County Sch. Bd. of Hanover County, Va.,* 516 F.3d 254
   (4th Cir. 2008)...........................................................................................................2

*Kerkham v. McKenzie,* 862 F.2d 884 (D.C. Cir. 1988) ........................................................2

*Kevin T. v. Elmhurst Community Sch. Dist. No. 205,* 2002 WL 433061 (N.D. Ill.
   March 20, 2002) .........................................................................................................2

*K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.,* 2008 WL 509422 (N.D.Cal. 2008) ......................5

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)............................................................................................................................7

*Miller v. San Mateo-Foster City Unif. Sch. Dist.*, 318 F.Supp.2d 851 (N.D. Cal. 2004)..............3

*Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115 (9th Cir. 2003) ...................6, 17

*North Kitsap Sch. Dist. v. K.W. ex rel C.W.*, 130 Wash.App. 347 (2005) ...................................2

*Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993) ..............................................2

*Pachl by Pachl v. School Bd. of Indep. Sch. Dist. No. 11*, 2005 WL 428587 (D. Minn. 2005)......................................................................................................................10

*Ringwood Bd. of Educ. v. K.H.J. ex rel. K.F.J.*, 2007 WL 44353433 (3rd Cir. 2007) ..................2

*Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d (1985)..................................................................................................22, 24

*Schaffer v. West*, 546 U.S. 49, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) .........................................22

*Shapiro v. Paradise Valley Unified Sch. Dist.*, 317 F.3d 1072 (9th Cir. 2003)..............................6

*Shaw v. District of Columbia*, 238 F.Supp.2d 127 (D.D.C. 2002) ............................................6

*Union Sch. Dist. v. Smith*, 15 F.3d 1519 (9th Cir. 1994)...................................................1, 8

*United States v. Wright*, 215 F.3d 1020 (9th Cir. 2000)........................................................7

*Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811 (9th Cir. 2007)......................5

*W.G. v. Target Range School Dist. No. 23*, 960 F.2d 1479 (9th Cir. 1995) .......................1, 4-5

**FEDERAL STATUTES AND REGULATIONS**

20 U.S.C. §1401(26) ................................................................................................21

20 U.S.C. §1414(d)(1)(A)(i) .................................................................................17, 20

20 U.S.C. § 1415(b)(6)(B) ...........................................................................................3

20 U.S.C. §1415(f)(3)(E).............................................................................................4

20 U.S.C. §1415(f)(3)(E)(ii)(II) .................................................................................6

34 C.F.R. §300.305(c) .............................................................................................15

34 C.F.R. §300.322 ..................................................................................................6

34 C.F.R. §300.345 ..................................................................................................6

34 C.F.R. §300.347(a)..............................................................................................20

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

**STATE STATUTES**

Cal.Educ.Code §56345.................................................................................20

Cal.Educ.Code §56345(a)(2).......................................................................17

Cal.Educ.Code §56363(a)............................................................................20

Cal.Educ.Code §56505(j) ..............................................................................3

Cal.Educ.Code §56505(l) ..............................................................................3

Cal.Educ.Code §56505(n) .............................................................................3

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant San Francisco Unified School District ("District") presents the following opposition to Plaintiff A.B.'s Motion for Summary Judgment ("Plaintiff's Motion") in this action. In his motion, Plaintiff has failed to point this Court to any evidence in the administrative record or any pertinent legal authority which would require this Court to reverse or modify the decision by Administrative Law Judge ("ALJ") Deidre Johnson in the underlying administrative special education "due process" proceeding. Thus, the District respectfully requests that the Court deny Plaintiff's Motion and fully affirm the decision of the ALJ .

## I. ALJ JOHNSON'S OPINION THOROUGHLY AND PROPERLY ANALYZES THE EVIDENCE TO DETERMINE WHETHER PLAINTIFF WAS DENIED A FAPE

As set forth in the District's Motion for Summary Judgment ("District's Motion"), district courts must give 'due weight' to judgments of education policy made by the administrative law judges who adjudicate special education "due process" litigation. *Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley ("Rowley")*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994); *Gregory K. v. Longview Sch. Dist.,* 811 F.2d 1307, 1311 (9th Cir. 1987). In particular, administrative law judges are deemed to have specialized expertise in educational issues and have also benefited from hearing live testimony. *W.G. v. Target Range School Dist. No. 23,* 960 F.2d 1479, 1483 (9th Cir. 1995); *Gregory K.,* 811 F.2d at 1314; *see also, Doe by and through Doe v. Smith,* 879 F.2d 1340, 1343 (6th Cir. 1989) [the *Rowley* "principle makes sense because federal courts are 'generalists with no expertise in the educational needs of handicapped children,' and will benefit from the factfinding of a state agency with expertise in the field."]; *Independent Sch. Dist. No. 23 v. Minnesota Dept. of Educ.,* 2007 WL 2774337, *3 (Minn.App. 2007) ["deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience."].

Further, where the written decision is thorough, detailed, careful, analytical and impartial, district courts should provide increased "substantial" deference. *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996); *Capistrano Unified Sch. Dist.*

1    *v. Wartenberg,* 59 F.3d 884, 891 (9th Cir. 1995); (District's Motion at 3:9-25).

2          Deference to the hearing officer makes sense in a proceeding under the Act for the
      same reasons that it makes sense in the review of any other agency action-agency
3          expertise, the decision of the political branches (here state and federal) to vest the
      decision initially in the agency, and the costs imposed on all parties of having still
4          another person redecide the matter from scratch.

5    *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir. 1988); *see also, Alan H. v. Hawaii,* 2007 WL

6    2790738, *4 (2007), *citing, Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1471 (9th Cir. 1993).

7          While volume in and of itself is not proof of a careful, reasoned decision, Courts routinely

8    give great deference to detailed opinions which carefully analyze the testimony and documentary

9    evidence presented by the parties. *Capistrano Unified Sch. Dist.,* 59 F.3d at 891 [twenty-six

10   single spaced pages covering ten days of testimony]; *J.P. ex rel. Peterson v. County Sch. Bd. of

11   Hanover County, Va.,* 516 F.3d 254, 262 (4th Cir. 2008) [court gave deference to lengthy opinion

12   which accurately summarized testimony and made findings on the issue; ALJ's level of detail

13   controlled somewhat by inability of hearing officers to receive full transcripts before decision

14   must be issued]; *Ringwood Bd. of Educ. v. K.H.J. ex rel. K.F.J.,* 2007 WL 44353433, *1-2 (3rd

15   Cir. 2007) [fifty-one page opinion containing thirty-two findings of fact improperly rejected by

16   district court without citation to substantial contrary evidence]; *North Kitsap Sch. Dist. v. K.W. ex

17   rel C.W.,* 130 Wash.App. 347, 361 (2005) [twenty-one pages of findings after two days of hearing

18   was evidence of a thorough and careful decision]; *Kevin T. v. Elmhurst Community Sch. Dist. No.

19   205,* 2002 WL 433061, *11, n. 6 (N.D. Ill. March 20, 2002) [court gave little deference to four

20   page opinion following four days of hearing and an administrative record of 1791 pages].

21          In this case, ALJ Johnson carefully and thorough summarized the testimony of twenty (20)

22   witnesses, presented over nine (9) days of hearing.  She cited all controlling legal authority and

23   then drew sound legal conclusions applying the law to those facts.  [AR 2436-2442 (¶1-24); 2442-

24   2447 (¶¶25-51).]  If, as Plaintiff points out, some of the numbered paragraphs contain a mixture of

25   law and fact, this is of no import.  (Plaintiff's Motion at 7:27-8:2, 8:5-6.)  The law does not require

26   a precise format for these decisions; only that they are "made on substantive grounds based on a

27   determination of whether the child received a free appropriate public education".  20 U.S.C.

28   §1415(f)(3)(E).  Plaintiff offers no evidence to show that ALJ Johnson fell short of this standard,

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP

6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   other than his conclusory allegation that the decision lacks support.  (Plaintiff's Motion at 8:2-4.)

2   **II.     THE ALJ CORRECTLY HELD THAT CLAIMS RELATED TO PLAINTIFF'S**

3   **         MARCH 2004 IEP ARE BARRED BY THE STATUTE OF LIMITATIONS**

4           The IDEA allows states to determine the time by which a request for due process hearing

5   must be filed. 20 U.S.C. § 1415(b)(6)(B).  n this case, the applicable limitations period is three

6   years, permitting claims that arose on or after October 6, 2003.  Ca.Educ.Code §56505(n);

7   District's Motion at 10:8-15.)

8           Plaintiff  fails to establish that the ALJ was incorrect in her analysis regarding the statute

9   of limitations.  Despite Plaintiff's argument that the ALJ's decision "presumes a bright line rule

10  that the date the IEP is signed is automatically the date of discovery for a procedural violation," he

11  cites to no statements in the ALJ's decision which suggests this.  Further, he cites to no authority

12  which demonstrates an error in law by the ALJ with respect to this issue.

13          A request for a due process hearing "shall be filed within three years from the date the

14  party initiating the request *knew or had reason to know of the facts underlying the basis for the*

15  *request*" (emphasis added).[1]  See Cal.Educ.Code §56505(j) (text of section operative until October

16  9, 2006); see also *Miller v. San Mateo-Foster City Unified Sch. Dist.("Miller")*, 318 F.Supp.2d

17  851, 860-61 (N.D.Cal. 2004) ("Section 56505(j) is in accord with federal law that the plaintiff's

18  awareness of the underlying facts starts the statute of limitations running.").

19          Plaintiff's March 26, 2003 IEP was attended my numerous District representatives and

20  Plaintiff's Mother.  Mother then acknowledged her participation in the development of the IEP

21  and her consent to its implementation on April 3, 2003.  [AR 3362.]  Thus, as of this date, Plaintiff

22  knew or had reason to know of any defects resulting from that IEP.

23          Plaintiff raised three claims with respect to the March 26, 2003 IEP:  (1) that the District

24  failed to provide clear written offer for integrated playgroups; (2) that the District failed to provide

25  _____

26  [1] The corresponding language of the current California Education Code section 56505(l) is nearly
    identical, stating that such claims "shall be filed within two years from the date the party initiating
27  the request knew or had reason to know of the facts underlying the basis for the request."

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP

6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    a clear written offer for speech and language; and (3) that the annual goals were not measurable.

2    [Plaintiff's Motion at 8:21-9:1.]  All of these claims are based on the content of the IEP document,

3    were therefore known or should have been known upon Mother's receipt of the IEP.  In general, to

4    determine whether a school district has offered FAPE, a court or administrative agency must focus

5    on the adequacy of the school district's program at the time it was offered.  *Adams v. State of*

6    *Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999).  Thus, unless Plaintiff can argue facts to toll the

7    statute of limitations, the date of the IEP will be the date of accrual for these claims.

8         However, in light of the evidence regarding Mother's pointed interest in the March 26,

9    2003 IEP immediately prior to the team meeting, it is difficult to believe that Mother did not read

10   the March 26, 2003 IEP closely upon its receipt.  For example, on March 18, 2003, Mother wrote

11   to the District suggesting contents for the IEP.  [AR 2785.]  On March 24, 2003, Mother drafted

12   her own proposed goals and objectives to discuss at the IEP team meeting.  [AR 89; 2786-2790.]

13   Mother was also the one who requested Plaintiff's participation in integrated playgroups.  [AR

14   92.]  Thus, Mother knew or had reason to know of the claims prior to the October 6, 2003 statute

15   of limitations bar, ALJ Johnson correctly concluded that she could not pursue them in due process.

16   [AR 2412 (¶98); 2419 (¶127); 2426 (¶165-166).]

17   **III.    THE ALJ PROPERLY CONCLUDED THAT PROCEDURAL VIOLATIONS**

18   **WHICH DO NOT RESULT IN A DENIAL OF FAPE CONSTITUTE HARMLESS**

19   **ERROR**

20        Plaintiff acknowledges that the ALJ correctly applied the standard of review for

21   determining whether a procedural violation constituted a denial of FAPE.  (Plaintiff's Motion at

22   9:16-18).  However, without any authority, Plaintiff argues that the mere fact that the ALJ had to

23   review several such alleged errors, she should have recognized a denial of FAPE from their

24   "cumulative effect."

25        Procedural flaws must result in the loss of educational opportunity to the student, seriously

26   infringe on the parent's participation in the IEP process, or cause a deprivation of educational

27   benefit to constitute a denial of a FAPE.  20 U.S.C. §1415(f)(3)(E); *Rowley*, supra, 458 U.S. at

28   206-07; *see also, Amanda J. v. Clark County School District* 267 F.3d 877 (9th Cir. 2001); *W.G. v.*

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  *Board of Trustees of Target Range School District No. 23*, 960 F.2d 1479, 1482 (9th Cir. 1992).

2  [Plaintiff's Motion at 9:16-18.]  Whether the ALJ had five or five hundred alleged procedural

3  violations to consider, she was required to undertake this analysis with each one, as she properly

4  did.  [AR 2437-2438 (¶ 8)].  Where there was no finding of lost educational opportunity or a

5  denial of parent participation, she correctly concluded that the violation was "harmless error"

6  because, ultimately, Plaintiff was not denied a FAPE.

7         Plaintiff argues that, when taken collectively, procedural errors that may individually

8  constitute harmless error individually can have a "cumulative effect" that amounts to a denial of

9  FAPE.  [Plaintiff's Motion at 9:25-26.]  However, Plaintiff cites no statute, case or regulation to

10 support this proposition.  Moreover, it stands to reason that, if an individual procedural violation

11 does not deny FAPE, several such violations do not automatically deny FAPE simply as the result

12 of being considered collectively.  If there are factual circumstances that could convert individually

13 harmless errors into denials of FAPE merely through their cumulative nature, Plaintiff has not

14 identified what these circumstances are, let alone established that such circumstances exist here.

15     A.    **Plaintiff's Mother Was Presented the Continuing Opportunity to**

16            **Meaningfully Participate in Her Son's Education**

17        Under the IDEA, procedural flaws which infringe on a parent's participation *in the IEP*

18 *process* constitute a denial of a FAPE.  *Rowley*, supra, 458 U.S. at 206-07; see also *Amanda J. v.*

19 *Clark County School District* 267 F.3d 877 (9th Cir. 2001).  The Ninth Circuit and this Court have

20 cited the following examples of such infringement: (1) parent not present when IEP developed

21 (*W.G. v. Bd. of Trustees of Target School No. 2,* 960 F.2d 1479, 1485 (9th Cir. 1992)); (2) IEP

22 developed without parent and then presented to parent for ratification (*K.S. ex rel. P.S. v. Fremont*

23 *Unified Sch. Dist.,* 2008 WL 509422, *10 (N.D.Cal. 2008); (3) District abandoned agreed to

24 program in IEP without reconvening the team for a meeting (*Van Duyn ex rel. Van Duyn v. Baker*

25 *Sch. Dist. 5J,* 502 F.3d 811, 828 (9th Cir. 2007)); (4) parent denied access to student records

26 showing evidence of disability denied full participation at IEP meeting (*Amanda J. ex rel. Annette*

27 *J. v. Clark County Sch. Dist.,* 267 F.3d 877, 894 (9th  Cir. 2001)).

28        Importantly, although the IDEA guarantees a free appropriate public education, it does not

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  require that the education be "designed according to the parent's desires." *Shaw v. District of*

2  *Columbia,* 238 F.Supp.2d 127, 139 (D.D.C. 2002); *see also, Rowley,* 458 U.S. at 207-208;

3  *Gregory K.*, 811 F.2d at 1314 [districts must only offer a basic floor of opportunity, even if

4  parent's preferred program will confer a greater benefit]. All that is required is that parents have

5  an adequate "*opportunity* to participate in the decision making process." 20 U.S.C.

6  §1415(f)(3)(E)(ii)(II); *see also, Fuhrmann v. East Hanover Bd. of Educ.,* 993 F.22d 1031, 1036

7  (3rd Cir. 1993) (parents' participation in IEP formulation process was meaningful because they

8  were provided with the draft IEP and given an opportunity to suggest changes, some of which

9  were incorporated); *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.,* 337 F.3d 1115, 1131 (9th Cir.

10  2003) (finding meaningful participation where parent attended but would not consent to IEP).

11  Federal regulations seek to achieve this through early notification requirements for team meetings

12  and the mandate that districts schedule such meetings at the parent's convenience. *E.P. v. San*

13  *Ramon Valley Unified Sch. Dist.,* 2007 WL 1795747, *7-8 (N.D.Cal. 2007), citing 34 CFR §

14  300.345 (but see 34 C.F.R. §300.322), *Shapiro v. Paradise Valley Unified Sch. Dist.,* 317 F.3d

15  1072, 1078 (9th Cir. 2003).

16      Here, the extensive administrative record in this case is replete with examples of Mother's

17  ongoing participation in her son's public special education, both in the development of the IEP's

18  and beyond. For example, Mother attended all IEPs, contributing her thoughts and requests, often

19  providing the District with written materials and even writing directly on the IEP.[2] She had

20  numerous conversations with Plaintiff's teachers and District service providers regarding his

21  progress needs, with many of her requests considered and implemented.[3] She sent various persons

22  at the District correspondence regarding ideas for her son's education and information about his

23  

24  [2] [AR 87:8-21; 85:14-89:23; 90:21-91:9; 92:1-15; 134:9-135:13; 156:24-157:23; 752:21-753:16;
754:10-11; 877:16-878:15; 1115:3-1116:2; 1137:5-14; 1283:1-19; 1318:6-9; 2785-2790; 3104-

25  3129.]
[3] [AR 165:4-11; 107:10-408:9; 450:3-452:19; 478:6-479:4; 483:6-19; 759:22-760:10; 813:15-

26  815:2; 842:21-843:21; 848:2-4; 849:10-851:10; 1000:17-1002:1; 1013:19-1016:3; 1017:11-25;
1088:1-9; 1102:5-12; 1110:16-21; 1148:7-21; 1339:1-9; 1360:7-1361:1; 1390:15-24; 1397:8-19;

27  3206-3210.]

28  

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

1  private services.[4]  Finally, Mother provided Dr. Nunno's assessment report, Plaintiff's Quest

2  Camp Evaluation and other information from third parties to at the District consideration.[5]  Based

3  on this evidence, ALJ Johnson consistently and repeatedly held that any procedural violations of

4  the IDEA committed by the District did not interfere with Mother's participation in the IEP

5  process.

6         **B.**    **There is No Evidence that Plaintiff Suffered Loss of Educational Opportunity**

7         On the one hand, Plaintiff alleges that the lack of assessments makes it too difficult to

8  determine whether Plaintiff has suffered a loss of educational opportunity.  On the other hand, he

9  appears to allege that the District's violations have, in fact, caused this very effect and he is

10  therefore entitled to significant reimbursements for private services.

11         Regarding Plaintiff's claim that he cannot show harmful effect because of the lack of

12  assessments, this presupposes that ALJ Johnson had no other information available to her

13  regarding Plaintiff's educational needs and levels of functioning over time.  Twenty witnesses over

14  nine days of hearing would appear to belie this conclusion.  In fact, the administrative record

15  provided the ALJ with a wealth of information regarding in the form of observations by Mother,

16  Plaintiff's teachers and service providers and voluminous documentary evidence.  This included

17  evidence that Plaintiff had progressed academically from grade to grade during the relevant time

18  period.[6]  Thus, ALJ Johnson had an ample basis upon which to evaluate whether Plaintiff lost

19

---

20  [4] [AR 144:17-24; 145:19-148:9; 149:23-150:17; 175:14-177:20; 178:24-180:8; 181:17-182:24;
21  180:19-184:8; 184:22-185:23; 760:14-761:24; 833:4-13; 1406:20-1407:4; 2785; 2803; 2820-2821;
    2823; 2830; 2892-2893; 3206-3226.]

22  [5] [AR 163:15-16; 164:2-165:2; 169:15-20; 847:7-22; 1013:19-1014:4; 1104:1- 11; 1339:13-21;
23  1350:22-1351:8; 1367:22-1368:9; 3206-3210; 3211-3213.]

24  [6] [AR 312:7-313:11; 340:16-342:15; 341:18; 402:16-403:25; 405:7-14; 1034:5-1035:20; 1538:7-
    19; 1574:20-1577:8; 2863-2864; 3367.]  Plaintiff acknowledges this fact by dropping his claim
25  that the District failed to assess his "academic weaknesses."  [Plaintiff's Motion at p. 18, n. 5.]
    Plaintiff cannot "reserve" this claim for his Reply brief.  *Lujan v. National Wildlife Federation*,
26  497 U.S. 871, 894-5, 110 S.Ct. 3177, 3192, 111 L.Ed.2d 695 (1990); *United States v. Wright*, 215
    F.3d 1020, 1030, n. 3 (9th Cir. 2000); *In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir.
27  1991.

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  educational opportunities over time.

2      Even Plaintiff acknowledges that, where ALJ Johnson found that the District had

3  committed a procedural violation that did result in a loss of educational benefit, she awarded a

4  remedy.  [Plaintiff's Motion at 6:2-14; Plaintiff's Motion at Appendix A.]  Thus, Plaintiff cannot

5  argue that the ALJ arbitrarily refused to find any denial of FAPE or fashion *any* remedy in this

6  case.  However, Plaintiff's Motion falls short of identifying any additional evidence of loss of

7  educational opportunity which would support additional remedies above and beyond that which

8  was already awarded in the ALJ's decision.

9  **IV.**    **THE ALJ CORRECTLY CONCLUDED THAT THE DISTRICT EITHER MADE A**

10        **CLEAR WRITTEN OFFER OF PLACEMENT FOR PLAINTIFF'S ESY**

11        **PROGRAMS OR THE FAILURE TO DO SO WAS HARMLESS ERROR**

12      Courts have held that the failure to make a formal written offer that clearly identifies a

13  proposed placement and related services constitutes a procedural violation of the IDEA.  *Union*

14  *Sch. Dist. v. Smith*, 15 F.3d 1519, 1526 (9th Cir. 1994); 20 U.S.C. §1415(b)(3)(A).  The Court in

15  *Union* discussed the reasons for imposing the formal written offer requirement: (1) to alert the

16  parents of the need to consider seriously whether the school district's proposed placement is

17  appropriate under the IDEA; (2) to help the parents determine whether to oppose or accept the

18  placement with supplemental services; and (3) so that the school district is more prepared to

19  introduce sufficient relevant evidence of the appropriateness of the placement at a due process

20  hearing.  *Id.*  Plaintiff's argues but fails to persuasively establish that the District denied Plaintiff

21  FAPE by failing to make a clear written offer of placement with regard to its offers of ESY

22  services for the summers of 2004, 2005 and 2006.  (Plaintiff's Motion at 15:8-16:11.)

23      First, Plaintiff argues that an "ambiguity" in the May 5 and 18, 2004 IEP regarding the

24  District's offer of placement for the 2004 ESY constitutes a failure to make a clear written offer.

25  However, Plaintiff fails to show why this offer was ambiguous.  Instead, Plaintiff cites to a

26  misstatement by the ALJ that the May 5, 2004 offer for an SDC placement at Starr King

27  Elementary School constituted the clear written offer.  [AR 2426 (¶168).] The District

28  acknowledges the Starr King offer was for the following school year and not the 2004 ESY.  Thus,

ALJ Johnson incorrectly held that this was the clear written offer.  However, as she held with respect to the 2006 ESY program, the failure to include the details of the District special education summer program in the May 2004 IEPs was still harmless error because Mother knew that the District had no general education summer school classroom in which Plaintiff could be placed because the District verbally explained this to her.  Further, "there was no evidence that [Mother] did not understand the offer or was confused."  Specifically, Mother stated she had "carefully considered SFUSD's offer of placement during summer of 2004 for [Plaintiff] and have come to the conclusion that the Extended School Year placement offer is not appropriate. . . ."  She then advised that she would be sending him to Quest Therapeutic Camp.  [AR 2426-2427 (¶168-169); 2824.]  Plaintiff has therefore failed to establish that the failure to place the 2004 ESY offer in writing led to a substantive deprivation of FAPE.

Regarding the 2005 ESY offer, ALJ Johnson correctly concluded that a clear written offer was made in the May 25, 2005 IEP.  [AR 2427 (¶173); 3271-3272.]  Plaintiff has cited to no evidence to the contrary.  Rather, Plaintiff spuriously argues that one witness' inability to recall details about the program on the witness stand constitutes proof that the offer was unclear.  [Plaintiff's Motion at 16:3-7.]  A teacher's inability to recall such details at a hearing occurring two years after the development of the 2005 ESY is due to memory difficulties rather than to any inherent lack of clarity in the written offer itself.  Further, Plaintiff fails to cite any authority which requires the written offer to include the name of the teachers or class size to constitute a clear written offer, as he suggest.  In fact, public policy would weigh against imposing such an onerous commitment on the District which requires flexibility in assigning teachers and filling classes based on enrollment needs and personnel availability.

Most importantly, the 2005 ESY offer contained sufficient specificity to satisfy the requirements of *Union* and enabled Mother to seriously consider whether the district's offer was appropriate.  Indeed, Mother again advised the District that she had "carefully considered SFUDS's offer of service and placement . . . and have come to the conclusion that service and the Extended School Year placement offers are not appropriate for [Plaintiff] . . . ."  [AR 3203.]  Thus, she had a sufficient understanding of the offer to reject it and opt to place plaintiff at Quest Camp

9                                          C 07-4738 (PJH)

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    for the summer of 2005.

2        Finally, with respect to the 2006 ESY placement offer, the ALJ concluded that Mother had

3    received both verbal explanation of the program at the IEP (which remained unchanged from the

4    previous two years) and a confirming letter containing specific details at a later date. [AR 2427-

5    2428-2429 (¶¶174-177); 3196.]  Nonetheless, Plaintiff argues that there is a violation because the

6    March 9, 2006, IEP alone lacked a sufficiently clear statement of placement.  [Plaintiff's Motion at

7    16:8-10.]  However, there is no law or regulation requiring that a student's ESY services be

8    offered at any specific time.  *Pachl by Pachl v. School Bd. of Indep. Sch. Dist. No. 11*, 2005 WL

9    428587, *8 (D. Minn. 2005).  Even assuming *arguendo* that this offer was insufficiently clear and

10   thus a procedural violation, the ALJ made a reasonable finding that Mother was cognizant of the

11   District's ESY program in a special day class and made an informed choice to reject it in favor of

12   Quest Therapeutic Camp.  [AR 2428 (¶177).]  Thus, Plaintiff fails to establish how this lack of a

13   clear written offer denied Plaintiff educational benefit, resulting in a denial of FAPE.

14       Plaintiff cannot not overcome the ALJ's finding that the failure to provide clear written

15   offers of the 2004 and 2006 ESY programs constituted harmless error.  Mother was clear in her

16   correspondence with the District, including her comments at IEPs that she understood the offer

17   was for a special education classroom, and that she did not want to see her son placed in such a

18   program.  [AR 131:6-132:19; 134:16-135:13; 829:13-840:15; 1270:10-17; 1132:25-1134:13;

19   1567:4-1568:11; 2824, 2901; 3203; 3258; 3306.]  Thus, failure to detail the ESY offers in writing

20   in the IEPs was harmless and did not result in a loss of educational benefit, did not interfere with

21   Mother's participation in her son's education and did not constitute a denial of FAPE.

22   **V.    THE ALJ CORRECTLY CONCLUDED THAT THE DISTRICT PROVIDED**

23   **PRIOR WRITTEN NOTICE WITH RESPECT TO PLAINTIFF'S ESY**

24   **PROGRAMS OR THE FAILURE TO DO SO WAS HARMLESS ERROR**

25       With regard to the District's obligation to provide prior written notice of the District's

26   refusal to change Plaintiff's ESY placement to Quest Camp, Plaintiff simply cites to the ALJ's

27   decision and calls it "flawed reasoning."  [Plaintiff's Motion at 16:12-17.]  Then, without authority

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

1  to support an error, Plaintiff argues that the ALJ cannot conclude that the refusal to change the

2  2004 ESY placement excuses the obligation to provide refusal for 2005 and 2006, especially

3  because the private programs procured varied from year to year. [Plaintiff's Motion at 16:14-17.]

4       This greatly misstates the ALJ's holding.  Rather, the ALJ concluded that because the

5  District had plainly refused to change "the summer ESY placement from a public school to Quest

6  Camp *in the [2004,] 2005 and 2006 IEPs*, [the] District was not obligated to again refuse to

7  change the ESY placement." (Emphasis added.)  [AR 2446-2447 (¶¶ 49-50).]  In other words, to

8  create a second writing whereby the District advised Mother that they would not fund Quest Camp

9  would have been redundant.

10       Rather, the ALJ held that the District had failed to provide prior written notice of its refusal

11  to fund Plaintiff's ancillary summer services such as music therapy and academic tutoring.  [AR

12  2447 (¶50).]  However, again, the ALJ properly held that this procedural violation did not

13  constitute denial of a FAPE because Plaintiff did not establish that the District's ESY offer was

14  inappropriate and that Plaintiff required these services to benefit from his education.  [AR 2447

15  (¶50).]  In his Motion, Plaintiff fails to point to any evidence in the record which supports an

16  opposite conclusion.

17  **VI.**     **OTHER THAN AS FOUND BY ALJ JOHNSON, THE DISTRICT DID NOT FAIL**

18         **TO ASSESS PLAINTIFF IN ANY AREAS OF SUSPECTED DISABILITY**

19       As acknowledged in the District's Motion, ALJ Johnson found that the District had failed

20  to perform a timely behavioral assessment, performed an improper occupational assessment and

21  performed an improper speech and language assessment.  In response she ordered that the District

22  perform additional assessments and reimburse Plaintiff for some of his privately procured

23  assessments and services.  [AR 2442 (¶25); 2443 (¶29, 31, 32).]  No further remedy is warranted.

24       **A.**     <u>**Functional Behavioral Assessment**</u>

25       Plaintiff contends that the ALJ erred in finding that the District's alleged failure to

26  appropriately assess Plaintiff's behavior did not result in a denial of FAPE because such failure

27  resulted in the loss of educational opportunity and benefits for Plaintiff.  [Plaintiff's Motion at

28  12:18-23.]  However, this contention is unavailing for several reasons.  First, the ALJ did hold

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

that, during Plaintiff's second grade year, his maladaptive behaviors warranted a functional behavior assessment ("FBA"). The ALJ held that the failure to timely assess resulted in a "loss of educational benefit including lack of academic grades for one quarter." [AR 2442 (¶ 25.)] Thus, awarded an appropriate remedy of reimbursement for Plaintiff's private assessment and attendance at a behavioral camp. [AR 2442 (¶ 25.)]

Second, over the next three school years, the District was able to address Student's behaviors and keep them at a manageable level without data from a behavior assessment. Student's maladaptive behaviors improved during his third grade year. [AR 2396 (¶¶30, 32); 3172.] Thus, the ALJ correctly concluded that Plaintiff no longer required an FBA during this time. [AR 2396-2397 (¶¶ 32, 35).] During Plaintiff's fourth grade year, the District provided a behavior support plan ("BSP") that included calming behavioral strategies, there was no evidence of temper tantrums or major disruptive behaviors, and Plaintiff made significant progress in eliminating and reducing maladaptive behaviors. [AR 2397 (¶36.); 2849; 1548:24-1549:4.] The ALJ reasonably concluded that, during his fourth grade year, there was no evidence that his behaviors impeded his learning, warranting reassessment.[7] [AR 2398 (¶37); 2411 (¶93.)] Finally, during his fifth grade year, Plaintiff exhibited only mild to moderate behaviors identified as "lack of motivation to complete assignments" that were addressed by a BSP. [AR 2397 (¶38.); 3269.] Thus the ALJ correctly concluded that the District was not required to reassess Plaintiff's behavioral needs at that time. [AR 2398 (¶38.)]

Third, Plaintiff asserts that the Ninth Circuit's decision in *Amanda J. v. Clark County Sch. Dist.,* 267 F.2d 877 (9th Cir. 2001) shows that the District's "failure to conduct appropriate behavioral assessment is a denial of FAPE because the window of opportunity to intervene with

---

[7] Plaintiff asserts that when the District attempted in Fall 2005 to complete the assessment that it had agreed to conduct in May 2005, "the administrator could not complete it due to [Plaintiff's] disruptive behavior." [Plaintiff's Motion at 12:13-14.] However, the only reference to disruptive behavior in the record is the assessor's comment that she could not observe Student in his classroom on one occasion because he was studying in the hallway after a "disruptive" nose-blowing incident in the classroom. [AR 3389.] Plaintiff does not cite to any significant behavioral "disruption" during the relevant time period that would require formal assessment.

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

1  appropriate programs for an autistic child like [Plaintiff] is so narrow." (Motion at 12:19-21.)

2  However, this assertion is without merit, as it mischaracterizes the reasoning of *Amanda J.*—a

3  case with facts significantly distinguishable from those of the instant matter.

4      *Amanda J.* involved an approximate three year old student, who had not previously been

5  diagnosed with autism, but for whom the school district had reports suggesting it as a possibility.

6  *Amanda J.,* 267 F.3d at 883-886. The reports recommended further psychiatric evaluation but

7  were withheld from student's parents for over a year. *Id.* at 893. The 9th Circuit held that the

8  district's failure to timely disclose these assessment reports to the parents was an "egregious"

9  procedural violation that interfered with the parents' participation in the IEP process, and therefore

10  denied a FAPE to the student. *Id.* at 883, *citing* National Research Council, *Educating Children*

11  *with Autism* (Catherine Lord & James P. McGee, eds., National Academy Press 2001).

12  Specifically, the school district's failure to disclose deprived Amanda of approximately one year

13  during which her parents could have sought, and Amanda could have received, autism-specific

14  early interventions. The 9th Circuit seemed appalled that the resulting one-year delay in starting

15  early intervention services may have "seriously impaired" Amanda's ability to access her

16  education.

17      By contrast, there is no question that throughout the relevant time period in this case,

18  Mother and District were aware of Plaintiff's autism and resulting behavioral needs. Unlike

19  Amanda's parents, Mother was never deprived of critical information about Plaintiff that rendered

20  the achievement of a FAPE impossible. Further, any failure by the District to "conduct

21  appropriate behavioral assessments" during Plaintiff's behaviors during his third, fourth and fifth

22  grade years did not infringe on Mother's ability to participate in Plaintiff's IEP process, as Mother

23  had all the information needed for Plaintiff's behavior needs to be served appropriately. Thus,

24  Plaintiff's use of *Amanda J.* to imply that any failure to assess constitutes a *per se* denial of FAPE

25  mischaracterizes the holding of that case, and completely fails to recognize that a lack of

26  assessment in a particular area does not deny FAPE where the student's needs in that area are

27  already fully identified and adequately addressed.

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

B.    **Neuropsychological or Psycho-educational Assessments**

Plaintiff privately retained two neuropsychologists to assess Plaintiff and requested that the District conduct its own neuropsychological exam.  [AR 2869-2891; 3278; 3425-3435.]  A neuropsychologist evaluates cognitive processing generally including, but not limited to, skills and deficits in an educational environment.  [AR 534:15-535:17; 1877:19; 1878:17.]  Often, a neuropsychologist, who focus on a medical approach to psychology, does not have specialized training or experience in educational issues, such as a school psychologist.  [AR 1880:23-1883:2; 1883:20-1884:16.]

In response to Mother's request for a neuropsychological assessment, the District advised that it could perform a psycho-educational assessment, which was the equivalent in terms of assessing educational issues, but was not equipped to perform a neuropsychological assessment.  [AR 1283:20-1284:8; 1318:10-22.]  However, the District failed to follow through in administering the psycho-educational assessment which the ALJ held to be a procedural violation of the IDEA.  [AR 2399 (¶42).]  However, as the ALJ concluded, there was no evidence that the failure to perform this assessment created a deprivation of educationa; benefit.  In fact, as the District's expert testified, it would have been bad practice for the District to have conducted its own assessment at or about this time, given that Plaintiff had just tested with Dr. Nunno and retested with Dr. Guterman in June 2005.  [AR 1879:14-24; 1910:18-1911:11; 1475:9-1476:1; 2399 (¶42).]  Thus, Plaintiff can point to no evidence which supports a District neuropsychological or psycho-educational assessment of Plaintiff.

C.    **Speech, Language and Social Skills Assessments**

In his Motion, Plaintiff claims that the ALJ provided an insufficient remedy for her finding that the District conducted an inadequate speech and language assessment by ordering reassessment.  [Plaintiff's Motion at 20:20-22; AR 2443 (¶31).]  However, this was not the only remedy provided.  As Plaintiff notes, the District reduced Plaintiff's speech and language therapy sessions following its assessment.  [Plaintiff's Motion at 21:1-2; AR 02420 (¶ 135); AR 02421 (¶ 136-137); AR 3167; 3327].  Accordingly, ALJ Johnson ordered the District to compensate Plaintiff for the equivalent time reduced.  [AR 2401 (¶47);2421 (¶137); 2433 (¶199); AR 3167;

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    3327.]  Thus it appears that no further remedy is warranted for this finding against the District.

2        Regarding social skills, ALJ Johnson concluded that Plaintiff had presented no evidence

3    which indicated a need for an updated social skills assessment.[8]  [AR 2404 (¶¶62-63).]  In his

4    Motion, Plaintiff argues that the only manner in which the District would know Plaintiff's needs in

5    this area would be to assess.  [Plaintiff's Motion at 21:10-11.]  However, this ignores the extensive

6    evidence in the record that the IEP team, including Plaintiff's Mother, discussed and documented

7    Plaintiff's social skills needs and addressed them through IEP goals and objectives.  [AR 1018:17-

8    1020:5; 2403 (¶61); 3096; 3163-3164; 3332; 3341; 3356.]

9        An assessment is only necessary when the IEP team lacks sufficient data, such as from

10   classroom observations and existing assessments, to draft goals and objectives for the student.  34

11   C.F.R. §300.305(c).[9]  As the ALJ properly concluded, Plaintiff pointed to no evidence which

12   demonstrated conditions warranting reassessment of Plaintiff's social skills.  [AR 2404 (¶63).]

13       **D.    Occupational Therapy Assessment**

14       Plaintiff does not challenge ALJ Johnson's determination that the District performed a

15   flawed occupational assessment.  Rather, he argues that a new assessment, rather than a remedy of

16   reimbursement was in error.  [Plaintiff's Motion at 21:14-24.]  However, the ALJ's finding was a

17   failure to *assess*, not a failure to deliver services.  [AR 2443 (¶¶29, 32).]  Further, Plaintiff was

18   receiving consultative OT services from the District.  [AR 2445 (¶43); 2843; 2848; 3250; 3268.]

19   Plaintiff presented no evidence which showed that the District's services were inadequate or that

20   the privately procured occupational therapy services were required to provide FAPE.  [AR 2423

21   (¶149).]

22       In his motion, Plaintiff's sole "evidence" to support reimbursement for services is Dr.

23   Nunno's May 2004 recommendation of "occupational therapy services."  [AR 3435.]  However,

24

25   [8] The District initially assessed Plaintiff in the area of social skills as part of his 2002 triennial
26   assessment.  [AR 2403 (¶60); 3442-3468.]

27   [9] A reassessment may also occur upon a parent's request.  However, Mother made no such request
     in this case.  [AR 2404 (¶62); 2438-2439 (¶12).]

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    Dr. Nunno did not testify and provided no direct evaluation of the services being provided by the

2    District.  Further, his report does not specifically opine that the music and metronome therapy

3    provided by Mother constituted the type of services that would address his "neurodevelopmental

4    motor integration, body-in space awareness and 'balance' capabilities."[10]  [AR 3435.]

5          **E.    Auditory Processing Assessment**

6          Plaintiff argues that the District's auditory assessment was inadequate, despite the ALJ's

7    finding to the contrary.  [Plaintiff's Motion at 21:25-22:14; AR 2443 (¶33).]  Specifically, Plaintiff

8    argues that (1) the results of the District's assessment showed a deficit, (2) the District did not

9    consider Dr. Nunno's auditory processing assessment and (3) the auditory assessment was flawed

10   per Plaintiff's assessor, Dr. Guterman.  [Plaintiff's Motion at 21:27-22:11.]  It is somewhat

11   unclear from Plaintiff's Motion, but it appears that the remedy sought is an additional auditory

12   processing assessment.  [Plaintiff's Motion at 22:2-4, criticizing AR 2403 (¶53).]

13         First, Plaintiff's argument that the District's assessment showed a deficit is puzzling.  As a

14   result of this finding, the evidence showed that the IEP team addressed his needs through

15   modifications and supports such as receiving "clear, direct and firm directions" and providing

16   directions that are "oral, short, specific, repeated" and instruction that is "broken down into

17   manageable parts.  [AR 2402-2403 (¶56); 2408-2409 (¶82); 3158; 3168.]  This is not contrary to

18   Dr. Nunno's report which concluded that Plaintiff's "auditory processing/sequential processing is

19   relatively weak and problematic," making no specific recommendations for services.  [AR 3432.]

20   It is unclear why Plaintiff is asserting that the assessment is inadequate as the evidence shows it

21   was conducted and resulted in modifications by the IEP team.

22         Second, Plaintiff's claim that the District never considered Dr. Nunno's report is

23   conclusion and speculation.  Mother advised the IEP team of the report in Plaintiff's 2004 IEP

24   team meeting and thereafter provided copies to various persons at the District who received and

25   reviewed the report.  [AR 156:24-157:20; 163:5-164:7; 1367:22-1368:9; 1414:18-1415:3.]

26   _____

27   [10] In fact, Mother did not procure metronome therapy services until the 2005-2006 school year,
     after Dr. Nunno's assessment.  [AR 2352:4-8.]

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

1    Plaintiff does not and cannot point to any evidence to support this claim.

2          Finally, Plaintiff generally references Dr. Guterman's criticism but fails to note that this

3    was a comment in her report, rather than testimony provided to the ALJ. [AR 2877-2878.] The

4    ALJ accurately summarized the written opinion and, in her discretion to weigh the credibility of

5    the witness, properly concluded that the 2005 auditory assessment was appropriate and no remedy

6    was required. *M.S. v. Vashon Island Sch. Dist.,* 337 F.3d 1115, 1127 (9th Cir. 2003) ["a finder of

7    fact's determination of credibility receives deference on appeal, because access to live testimony is

8    important to the credibility finding"]; [AR 2409 (¶83).] Plaintiff fails to point to any evidence or

9    authority which demonstrates that the ALJ should have evaluated the evidence differently.

10   **VII.   THE ALJ PROPERLY CONCLUDED THAT THE DISTRICT ADEQUATELY**

11         **DEVELOPED GOALS TO PROVIDE PLAINTIFF WITH A FAPE**

12         Under the IDEA, an IEP must include a "statement of measurable annual goals" which

13   allows the "child to be involved in and make progress in the general education curriculum and

14   meet each of the child's other educational needs that result from the child's disability." 20 U.S.C.

15   § 1414(d)(1)(A)(i)(II); *see also* Cal.Educ.Code § 56345(a)(2). The goals must be based on a

16   discussion of the student's current performance (i.e. "baseline data") and include specific short-

17   term objectives or benchmarks towards which he or she can work. *See, e.g. French v. Omaha*

18   *Public Schools,* 766 F.Supp. 765, 794-796 (Neb. 1991); *B.B. v. Hawaii Dept. of Educ.,* 483

19   F.Supp. 1042, 1047 (D. Hawai'i 2006). In this case, and applying the standards above, ALJ

20   Johnson properly concluded that the District did not deny Plaintiff a FAPE through inappropriate

21   or inadequate annual goals.[11]

22         **A.      Detailed Baseline Data Was Included in Each IEP**

23         In order to set a goal, the IEP team must first identify the student's current abilities. Such

24   "baseline data" is typically obtained by looking at a combination of assessment data and

25   _____

26   [11] The District will not specifically address the goals in the March 2003 IEP, as they are beyond
     the statute of limitations. However, the District contends that these goals are also sufficient for the
27   reasons set forth in this section.

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   observational information regarding the student's performance in the classroom.  *See, e.g. French*

2   *v. Omaha Public Schools,* 766 F.Supp. 765, 794-796 (Neb. 1991); *B.B. v. Hawaii Dept. of Educ.,*

3   483 F.Supp. 1042, 1047 (D. Hawai'i 2006).  There is no "magic language" which is required so

4   long as the IEP reflects an understanding of the student's abilities, deficits and needs.  *French,* 766

5   F.Supp. at 794-796 (numerous brief but specific descriptions of student's abilities adequate to

6   paint a picture at the time of the IEP).

7         In his motion, Plaintiff disingenuously quotes from a *portion* of the District's form which

8   records the student's Measurable Annual Goals & Short Term Objectives (Benchmarks) ("Page

9   4") and labeled as the "baseline" information.  [AR 3354-3358 (2003) 3330-3335 (2004); 3160-

10  3166 (2005) 3252-3257 (2006).]  In doing so, Plaintiff ignores the voluminous detailed

11  information also presented on the District's "Page 2" – Present Levels of Academic/Functional

12  Performance – and in the Continuing Notes and/or Addendum sections of the IEPs. [AR 3352,

13  3363 (2003); 3320, 3327-3329 (2004); 3158, 3173 (2005); 3250, 3262-3267 (2006)].  For all but

14  two goals in 2005, the ALJ properly found that the *cumulative* baseline information contained in

15  the IEPs was sufficient to draft Plaintiff's goals.

16        For example, in 2004, the IEP described the following present levels of performance:

17        [A.B.'s] progress towards his speech/language IPE goals has been limited by
          frequent absences and his behavior (e.g. refusal to transition, attend/focus, follow
18        rules) over the course of the school year.  However, [he] has shown improvement
          in behavior [and] has responded very positively to visual schedules and
19        reinforcement/reward systems.  *** Last year's IEP goals for speech targeted:
          using appropriate sentence structure to describe a 3-4 picture sequence without
20        perseverating; using spatial, quantity, and location concepts, pronouns, 3rd person
          singulars, and irregular past –tense verbs in complete sentences of appropriate
21        structure to describe pictures; using appropriate sentence structure to answer "wh"
          questions from a story; demonstrating appropriate turn-taking skills when engaging
22        in activities with peers or the clinician; demonstrating appropriate attention/focus
          when following a written rules/instruction; and choosing the appropriate
23        action/response to social scenarios from a field of 2 possible written answers.  As
          indicated above, [A.B.'s] progress towards the above goals was limited by frequent
24        absences and refusal to do work.

25        The goals also included specific baselines of (1) Independent Work Skills: "20-50% of

26  work completed daily;" "will begin work 20-50% of the time;" (2) Social Interaction: "difficulty

27  interacting with peers"; "does not tell peers to stop pushing/taunting; difficulty joining in play;"

28  "difficulty playing with students at recess;" (3) Communication: "difficulty expressing self, grabs,

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    pushes, leaves area;" "avoids tasks, lays on floor, interrupts with refusals to do work on non-

2    related topics to avoid working." [AR 3330-3335.] *This is just a partial statement of the baseline*

3    *data included in this IEP.*

4         In 2005, the IEP described the following present levels of performance:

5         [A.B.] has been better this year with accepting limits and making appropriate
         choices when reminded or asked what the next choice would be. [He] has been
6         working on his ability to finish work to completion. [He] needs clear, direct and
         firm directions. [He] needs direct instruction to learn and interpret social cues and
7         perspetive taking. [He] needs help to stay focused and work independently and
         follow directions. [AR 3158]

8
         The goals also included specific baselines of (1) Reading: "needs significant adult support
9
10   and frequent prompting and forced choice to answer the question" (2) Writing: "needs significant

11   adult support to complete any writing task that is not of interest"; (3) Math: "needs significant

12   adult support to complete math word problem" (4) Social Interaction: "tends to chase, tease, make

13   faces at peers and does not feel what other people feel and what they think of him"; (5) Social

14   Perspective Taking: "[A.B.] lacks social perspective taking [,] does not verbalize his feelings nor

15   aware [of them,] is not aware of others' feelings [,] not aware of [what] other people [are] thinking

16   of him." [AR 3160-3165.] The March 23 2005 IEP also incorporated assessment results in the

17   areas of behavior, auditory processing speech and occupational therapy. [AR 3158.]

18        In 2006, the IEP described the following present levels of performance:

19        [A.B.] is at grade level in math and decoding. [He] needs to improve critical
         thinking skills and comprehension skills. Paying attention to and focusing on
20        something of low interest is extremely hard. [He] has a hard time with
         mathematical words problems and with his fluency. [He] needs to improve his
21        writing organization skills. * * * [A.B.] is functional in his school environment.
         He has difficulty with attention to task which impedes his academics. When
22        attentive, he is able to write appropriately and legibly. [A.B.] appears to work best
         when given a goal directed outcome. To give breaks often is beneficial for him and
23        ultimately produces more work. * * * [A.B.] is showing progress towards
         interaction skills within structured speech therapy sessions; for example, asking
24        another person a question, making comments during conversations, showing
         listening skills, and speaking with appropriate vocal volume.

25   [AR 3250, 3263, 3257.]

26        The 2006 goals also included specific baselines of (1) Comprehension: "can find the main

27   idea in text and 2-3 supporting details"; (2) Writing: "can write 1 paragraph with minimal

28   assistance"; (3) Mathematical Reasoning: "can solve word problems involving + and −"; (4)

---

19                                                                            C 07-4738 (PJH)

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   Attention: "can attend for 5 minutes with adult support;" (5) Pragmatics: "shows confusion with

2   comprehending facial expressions and their meanings," "needs guidance and prompts to engage in

3   back and forth conversation and has difficulties with taking turns" and "needs practice and help

4   with engaging in both structured and unstructured conversations and discussions with peers and

5   teachers." [AR 3252-3257.]

6          Plaintiff relies heavily on the decision in *Bend-Lapine Sch. Dist. v. K.H.,* 2005 WL

7   1587241 (D.Or. 2005), where the court evaluated the district's statements regarding the student's

8   *present levels of performance,* finding them to inadequate.  Plaintiff then tries to apply this holding

9   to the limited text labeled as "baseline" in the various IEP's, ignoring that *Bend-Lapine*

10  emphasizes the present levels of performance as the articulation of the student's baseline.  While,

11  in practice, the District distilled this information into a more concise statement elsewhere on the

12  IEP, this summary is not the sole measure of the adequacy of the IEP.  Rather, Plaintiff's IEPs

13  consistently painted a clear picture of his present levels of performance on which measurable goals

14  could be developed.  [AR 2438 (¶10), *citing* 20 U.S.C. §1414(d)(1)(A)(i); 34 C.F.R. §300.347(a);

15  Cal.Ed.Code §56345.]

16         **B.      <u>Plaintiff's Goals Were Measureable</u>**

17         ALJ Johnson concluded that all but two of Plaintiff's goals were, in fact, measurable and

18  addressed Plaintiff's unique needs.[12]  [AR 2414-2418 (¶¶109, 112, 114, 118, 119, 123.]  Plaintiff

19  further presents little in the way of a challenge to this finding in his Motion.  The mere allegation

20  that the goals contain words such as "improve" or "appropriate" are inadequate in specifying how

21  the specific goals are not measurable.  [Plaintiff's Motion at 25:18-25.]  Rather, other than as

22  already held by the ALJ, the goals are quite specific and descriptive as follows:

23         *2004*

24         Given classroom work assignments with visual supports and clear structure and
           directions, [A.B.] will complete assignments with adult monitoring, 4 out of 5
25

_____

26  [12] Further, despite the finding of two goals as "materially flawed", the ALJ concluded that this did
    not affect the efforts of the District, who collaborated with Parent, to address and meet Plaintiff's
27  communication needs.  [AR (¶116).]

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

assignments.

[A.B.] will communicate for self-help purposes with peers, teachers, paraprofessionals, and other professionals 4 out of 5 opportunities daily.

*2005*

When given a selected third grade expository passage, [A.B.] will distinguish the main idea and supporting details in the passage with minimal adult support … with 90% accuracy in 2 out of 3 trials…

Following teacher-led prewriting activities, [A.B.] will compose a single paragraph including a topic sentence, five supporting sentences and a concluding sentence with min. adult support … 85% accuracy in 2 out of 3 trials as measured by student….

*2006*

When asked to formulate predictions about text, [A.B.] will use prior knowledge, ideas from illustrations, titles, topic sentences, key words and clues to make and confirm predictions … with 80% accuracy in 3/4 trials as measured by teacher-charted observations and student work samples.

When given a word problem, [A.B.] will determine the approach and operation needed (+. -, x, ÷) to successfully complete the problem…with 80% accuracy in 3/4 trials as measured by teacher-charted observation.

[AR 3160, 3161, 3252, 3254, 3330, 3333.]  Again, Plaintiff is not specific in his motion as to why these are not sufficiently measurable.

## VIII.  THE ALJ PROPERLY CONCLUDED THAT THE DISTRICT PROVIDED PLAINTIFF WITH THE APPROPRIATE PROGRAM AND SERVICES TO CONSTITUTE A FAPE

In providing a "basic floor of opportunity" under the IDEA, Districts are required to include access to specialized instruction and services that are individually designed for the student and provide educational benefit.  *Rowley* at 201.  The term "related services," referred to as designated instruction and services ("DIS") in California, includes transportation and such developmental, corrective, and "other supportive services… as may be required to assist a child with a disability to benefit from special education…."  20 U.S.C. § 1401(26); Cal.Educ.Code §56363(a).

Plaintiff states in his Motion that the ALJ inappropriately required that he prove a negative, i.e. that the programs and services provided by the District were unreasonable.  (Plaintiff's Motion

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   at 26:21-22.)  Plaintiff tries to further excuse himself from his obligation to present evidence on

2   the issue by stating he cannot know what is appropriate because the District failed to conduct

3   assessments.  (Plaintiff's Motion at 26: 22-26.)  However, as the petitioning party in due process,

4   it was Plaintiff's burden to show that the District failed to provide a FAPE.  *Schaffer v. Weast*, 546

5   U.S. 49, 126 S.Ct. 528, 537, 163 L.Ed.2d 387 (2005).  And, where he is requesting reimbursement

6   for programs are services that were private procured, he must show that such services were

7   appropriate.  *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369-371, 105

8   S.Ct. 1996, 85 L.Ed.2d (1985); *Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 11, 114 S.Ct.

9   361, 126 L.Ed.2d 284 (1993); 20 U.S.C. § 1412(a)(10)(C).

10          The only specific allegation made by Plaintiff in his Motion on the subject of services is

11  that the District failed to incorporate the recommendations of Dr. Nunno and Dr. Guterman in his

12  IEPs.  (Plaintiff's Motion at 26:26-28; AR 2399, n. 13.)  More specifically, Plaintiff contends that

13  the District should have provided occupational therapy (in the form of music and metronome

14  therapy), daily speech and language therapy and integrated playgroups.[13]  (Plaintiff's Motion at

15  26:26-27:8.)  However, Plaintiff points to no evidence in the record which shows that these

16  services were necessary and therefore lacking from the District program.

17          **A.**     **Dr. Vincent Nunno's Assessment Did Not Require a Change in Plaintiff's**

18                 **Program or Services**

19          Dr. Vincent Nunno completed a psychological and psychoeducational assessment of

20  Plaintiff on May 27, 2004.[14]  [AR 163:15-23; 3425-3435.]  As part of his work, he reviewed prior

21  District assessments and IEPs.[15]  [AR 3425-3426.]  However, the report does not significantly

22  discuss or evaluate the District's program and predominantly focuses on Plaintiff's performance

23  ─────────────────────

24  [13] As noted in the District's motion, ALJ Johnson did find that the District had improperly reduced
    Plaintiff's speech and language therapy during the 2005-2006 school year (fourth grade).  A
25  compensatory remedy was awarded and Plaintiff did not appeal this finding.  [AR 2420 (¶ 135);
    AR 2421 (¶ 136-137); AR 3167; 3327].

26  [14] Dr. Nunno did not testify on Plaintiff's behalf at the due process hearing.  [AR 2401 (¶51).]

27  [15] It contained no review or comment on the District's 2002 assessments.  [AR 2401 (¶46).]

28

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

on several cognitive and motor assessments. Importantly, Dr. Nunno did not conduct any speech and language or behavioral assessments. [AR 3428-3431.]

The report concluded that Plaintiff should remain in a general education classroom with a full time aide, which is consistent with the District's program.[16] [AR 2394 (¶21); 3434.] It also recommended a behavior plan, daily speech and language services, OT services, and a summer social program. The report was provided to the District in June 2004 and then later provided to Plaintiff's classroom teacher, special education inclusion teacher and aide. [AR 2396 (¶28), n. 9; 2401 (¶52); 171:21-172:22; 2830.]

Contrary to Plaintiff's assertion, the evidence showed that the District took Dr. Nunno's report into consideration together with its own occupational therapy, speech and language and auditory processing assessments. [AR 2401-2402 (¶47, 52, 56).] However, Plaintiff can point to no specific critique by Dr. Nunno of the District's program or services which should have been followed. If anything, his broad recommendation for services lacks sufficient detail or supportive test results to alert the District that a change was necessary to provide FAPE.

**B.** **Dr. Tina Guterman's Assessment Did Not Require a Change in Plaintiff's Program or Services.**

Dr. Guterman completed a neuropsychological assessment of Plaintiff on June 17, 2005 which focused on cognitive skills, social and emotional functioning and a cursory examination of motor and sensory abilities. [AR 548:2-13; 2869-2891.] Importantly, Mother never gave the District a copy of this report, due to her assumption that it would be ignored. [AR 764:16-765:1.] Thus, it is disingenuous for Plaintiff to argue that the information in this report should have guided the District in selecting services. Moreover, Dr. Guterman's report does not even make specific recommendations for services. She notes that Plaintiff requires a full-time aide which, again, is consistent with the District program. [AR 2890 (¶2).] She then recommended that the District

---

[16] The District failed to provide Plaintiff with an aide for a five-month period and received a compensatory remedy from the ALJ. [AR 2422 (¶146).] However, this period of time also precedes receipt of Dr. Nunno's report and was therefore not a refusal by the District to implement his recommendation.

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   work with Mother's private specialists to "appropriately implement their findings and

2   recommended [sic] interventions within [Plaintiff's] learning environment." [AR 2891 (¶3).]

3   These broad recommendations, which were not even before the District until the hearing in this

4   matter, fail to provide a sufficient basis upon which the District should have modified Plaintiff's

5   program or services.

6           Plaintiff has failed to point to any evidence which directly challenges the adequacy of the

7   District's program and services. Thus, this Court should affirm the ALJ's determination that the

8   District did not deny FAPE by providing an inadequate program or services. [AR 2420 (¶131);

9   2421 (¶138); 2423 (¶¶149, 152) 2433 (¶200); 2435 (¶212); 2436 (¶214).

10  **IX.   THE ALJ ACTED WELL WITHIN HER BROAD DISCRETION TO GRANT OR**

11  **        DENY RELIEF BASED ON THE EQUITIES IN DENYING REIMBURSEMENT**

12  **        FOR SUMMER QUEST CAMP AND OTHER SUPPLEMENTAL SERVICES**

13          Parents *may* be entitled to reimbursement for the costs of private placement or educational

14  services that they have procured for their child when the school district has failed to provide FAPE

15  prior to the enrollment and/or provision of *appropriate* private services. *Sch. Comm. of*

16  *Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369-371, 105 S.Ct. 1996, 85 L.Ed.2d (1985);

17  20 U.S.C. § 1412(a)(10)(C). However, the courts have made clear that such a remedy is

18  permissive and not mandatory.

19          [W]e note that once a court holds that the public placement violated IDEA, it is
            authorized to "grant such relief as the court determines is appropriate." 20 U.S.C. §
20          1415(e)(2). Under this provision, "equitable considerations" are relevant in
            fashioning relief," (citation) and the court enjoys "broad discretion" in doing so.
21          (Citation.) Courts fashioning equitable discretionary relief under IDEA must
            consider all relevant factors including the appropriate and reasonable level of
22          reimbursement that should be required. Total reimbursement will not be
            appropriate if the court determines that the cost of private education was
23          unreasonable.

24  *Florence County School District Four v. Carter*, 510 U.S. 7, 11, 114 S.Ct. 361, 126 L.Ed.2d 284

25  (1993). Further, as set forth by the Supreme Court in *Carter* and *Burlington*, there is no

26  entitlement to reimbursement merely because the student benefits from a privately obtained

27  education service. Indeed, there is probably no private educational service that would not confer

28  at least some benefit to a student who engaged in it.

1    Plaintiff argues that the ALJ's prescribed remedy of a new assessment for the failure to

2  appropriately assess does not and cannot compensate for the District's failures to assess, because

3  of the resulting missed services.  [Plaintiff's Motion at 28:4-11.]  However, Plaintiff has failed to

4  point to any evidence that the ALJ abused her discretion in fashioning this equitable relief.

5  Rather, in determining what remedies were appropriate, the ALJ provided careful and thoughtful

6  analysis which is owed deference.  *Union*, supra, 15 F.3d at 1524.  Therefore, Plaintiff's argument

7  that the ALJ's awarding of new assessments amounted to no remedy at all is unavailing.

8  **X.    CONCLUSION**

9    This is a clear case of a mother who cares immensely for her son.  She has spent

10  considerable time and personal resources in an effort to ensure he succeeds in his education and in

11  life.  However she cannot confuse her right to participate in her son's public education with a

12  requirement that the District follow her every direction and pay for all of his private services.

13  Ultimately, the District is responsible for developing a program which meets plaintiff's unique

14  needs and provides him with a basic floor of opportunity. With some missteps, for which a remedy

15  has already been fashioned, the District has developed IEPs which ensured Plaintiff's academic

16  progress and provided the needed services and supports to provide a FAPE.  Thus the District

17  requests that the Court affirm the ALJ's decision in its entirety.

18

19  DATED: May 14, 2008                    FAGEN FRIEDMAN & FULFROST, LLP

20

21                                         By:  /s/ Kimberly A. Smith

22                                              Kimberly A. Smith
                                                Attorneys for Defendant San Francisco Unified
23                                              School District

24

25

26

27

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

DEFENDANT SAN FRANCISCO UNIFIED SCHOOL DISTRICT'S OPPOSITION TO PLAINTIFF A.B.'S
MOTION FOR SUMMARY JUDGMENT