1

2

3

4

5   IN THE UNITED STATES DISTRICT COURT

6   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8

9   DANIEL M. MILLER,                                No. C 10-00264 WHA

10          Plaintiff,

11   v.                                              **ORDER ON MOTION FOR**
                                                     **LEAVE TO FILE SECOND**
12   FACEBOOK, INC. and YAO WEI YEO,                 **AMENDED COMPLAINT**

13          Defendants.
     _____/
14

15                              **INTRODUCTION**

16          This action illustrates the slipperiness of enforcing intellectual property rights in a world

17   where creating and dispersing infringing material to the public via social networking websites has

18   become all too easy.  Plaintiff is software developer Daniel Miller, who owns a copyright to a

19   video game called "Boomshine."  Played over the Internet using Adobe Flash (a multimedia

20   platform for online gaming), Boomshine is a simple "chain-reaction" video game wherein the

21   user is presented with a screen full of colorful swirling dots.  When the user clicks near any one of

22   these dots, a cascade of explosions begins whereby the explosion of the first dot causes other dots

23   in the vicinity to themselves explode.  Fun ensues.

24          Defendants are software developer Yao Wei Yeo and social-networking website operator

25   Facebook, Inc.  Defendant Yeo stands accused of directly infringing plaintiff's copyright in

26   Boomshine by unlawfully reproducing the "look and feel" of plaintiff's Boomshine video game

27   and distributing the copy-cat game through Facebook under the moniker "ChainRxn."  Defendant

28   Facebook is accused of contributorily infringing plaintiff's copyright in Boomshine by providing

*United States District Court*
For the Northern District of California

**United States District Court**

For the Northern District of California

Yeo — via his Facebook user account and the Facebook Application Directory — with an easy platform to distribute the alleged infringing video game to other Facebook users around the globe.

In the instant motion, plaintiff Miller seeks leave to file a second amended complaint against both Yeo and Facebook.  Defendant Facebook — who is the only defendant who has been served and has appeared in this action — opposes the motion.  For the following reasons, plaintiff's motion for leave to amend is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

The following factual allegations are taken from plaintiff's *proposed* amended complaint and are accepted as true for the purposes of the instant motion.

In early 2007, plaintiff Daniel Miller authored the video game Boomshine (Compl. ¶ 9). As noted earlier in this order, Boomshine is played over the Internet using Adobe Flash, and involves colorful swirling dots that the player tries to obliterate through a chain reaction of explosions (*id.* ¶ 10).  On March 9, 2007, plaintiff published Boomshine on the website K2xL.com (*id.* ¶ 11).  Plaintiff was thereafter granted a software copyright registration — but apparently not an "audiovideo" copyright registration — for the Boomshine computer program by the United States Copyright Office (*id.* ¶ 12).

With respect to defendants, the proposed complaint alleges that defendant Yeo does business as Zwigglers Apps on the websites "www.facebook.com/zwigglers" and "www.zwigglers.com" (*id.* at ¶ 13).  At least as early as April of 2009, defendant Yeo published a game called ChainRxn on a website hosted by Facebook (*id.* at ¶ 14).[1]  ChainRxn was supposedly created and published utilizing the Facebook Developer Platform and has the same "look and feel" of Boomshine, incorporating almost every visual element of the game (*id.* at ¶¶ 15, 23). From the date of its initial publication on Facebook until sometime after the initial filing of the instant action, users purportedly accessed ChainRxn by navigating from a link at "www.facebook.com/zwigglers."  This link would take the user to a Facebook webpage called the

---

[1]  As explained herein, this does not mean that the alleged infringing video game itself was being stored on defendant Facebook's servers.  Rather, as explained at the hearing and in the proposed complaint, the ChainRxn game was allegedly presented by Facebook's website to its users through the use of an inline frame (or an "iFrame") so that the content appeared to be originating from Facebook's website.

**United States District Court**
For the Northern District of California

1    ChainRxn "canvas page" (*id.* at ¶ 16).  The proposed complaint describes the ChainRxn "canvas

2    page" as follows (*id.* at ¶ 17):

> The *ChainRxn* canvas page was a webpage sent from Facebook
> that provided information related to *ChainRxn*, advertisements
> from Facebook, and an embedded iFrame in the users browser.
> The Facebook canvas iFrame caused the users' browser to retrieve
> information from a website designated by Defendant Yeo while
> making it appear to the user that the user was receiving
> information hosted on, or provided by, the Facebook website.

7         In maintaining his presence on Facebook, defendant Yeo allegedly agreed to the Facebook

8    Statement of Rights and Responsibilities which provide Facebook with the right to (1) remove

9    access to content through Facebook if that content infringes other people's intellectual property

10   rights and (2) disable defendant Yeo's Facebook account for continued infringement of third-

11   party intellectual property rights (*id.* at ¶¶ 18–19).

12        Defendant Facebook, in turn, allegedly took the "affirmative step" to approve the

13   ChainRxn game for publication in the Facebook Application Directory, which "allows every

14   Facebook user to search and view the application from within the directory" (*id.* at ¶¶ 20–21).

15   According to the proposed complaint, the publication of ChainRxn on Facebook's website

16   deceived the public regarding the origin of ChainRxn, and defendant Yeo was assisted in his

17   ability to distribute infringing copies of ChainRxn to Facebook users across the United States and

18   the world because of the ability to access ChainRxn through Facebook and the game's inclusion

19   in the Facebook Application Directory (*id.* at ¶¶ 24–25).

20        On May 7, 2009, plaintiff sent a letter to Facebook demanding that the ChainRxn game be

21   removed from the Facebook website due to its infringement of plaintiff's Boomshine copyright

22   (*id.* at ¶ 27).  That same day, a similar letter was sent to defendant Yeo (*id.* at ¶ 29).  Despite this

23   demand that defendant Facebook remove ChainRxn from its website, Facebook allegedly refused

24   to do so until sometime after the instant action was filed.  Specifically, Facebook did not remove

25   end-user access to the ChainRxn game through its website by either of the following two steps:

26   (1) disabling defendant Yeo's Facebook account or (2) removing ChainRxn from the Facebook

27   Application Directory.

28                        *              *              *

3

This litigation has followed a tortuous path.  On October 9, 2009, plaintiff filed this action in the United States District Court for the Northern District of Georgia (Dkt. No. 1).  Nearly two months later, the action was transferred to this court, after which Facebook filed a motion to dismiss (Dkt. Nos. 17, 25).  The day before the hearing on the motion to dismiss, plaintiff filed a first amended complaint, throwing a wrench into many of Facebook's arguments (Dkt. No. 37).  At the hearing on the motion, the undersigned allowed Facebook and plaintiff Miller to file supplemental briefs in light of the revised allegations in the first amended complaint (Dkt. Nos. 39, 40).  After review of these additional briefs, the Court dismissed plaintiff's claims of direct and indirect copyright infringement, but allowed plaintiff fourteen calendar days to file the instant motion (Dkt. No. 49).

As mentioned earlier, defendant Yeo has still not been served with the summons and complaint, despite supposedly diligent efforts by plaintiff to ascertain his location (Compl. ¶ 3).

**ANALYSIS**

**1.    LEGAL STANDARD.**

Leave to amend a complaint should be freely given when justice so requires under FRCP 15(a).  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The principal limiting factor to the liberal amendment standard is that "[l]eave to amend need not be granted when an amendment would be futile."  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).  At this stage of the litigation, an amendment is not futile so long as the proposed amended complaint states a claim that would survive a motion to dismiss.

A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That said, a court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).  All allegations of material fact, however, are taken as true at the motion-to-dismiss stage and construed in the light most favorable to the non-moving party.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

**United States District Court**
For the Northern District of California

### 2.   THE PROPOSED COMPLAINT

In the prior order dismissing plaintiff's first amended complaint, the undersigned identified the following deficiencies (Dkt. No. 43 at 2):

> The complaint does not specify what exactly is published on defendant Facebook's website with regard to ChainRxn. In other words, the complaint does not allege whether defendant Facebook's website contains information about ChainRxn, a link to the ChainRxn game, the actual ChainRxn game, pictures of the ChainRxn game, or a combination of these and/or other things. The complaint also does not specify what Facebook users are allowed to "search and view" on the application directory. Furthermore, plaintiff does not explain how defendant Facebook "host[s]" the website on which the ChainRxn game is located. It is unclear how the website that contains the ChainRxn game is connected to defendant Facebook, and it is unclear how defendant Facebook manages the website, if at all.

Due primarily to these failures, the undersigned dismissed claims of direct and indirect infringement asserted against Facebook.

The proposed complaint attempts to address these deficiencies. *First*, unlike the prior complaint where only a single claim of copyright infringement was leveled against both defendants, the claims now delineate between defendants Facebook and Yeo. As to defendant Facebook, plaintiff has abandoned his claim of direct copyright infringement and is proceeding solely on a theory of contributory copyright infringement, which is a specific species of indirect infringement. Only defendant Yeo remains accused of direct copyright infringement. *Second*, plaintiff has pleaded additional facts regarding the manner in which the ChainRxn game is (or was) accessed via the Facebook website, including details surrounding the aforementioned ChainRxn "canvas page." As discussed below, these amendments are sufficient to state a claim of contributory copyright infringement against defendant Facebook.

### 3.   Contributory Copyright Infringement

Facebook argues that plaintiff's claim for contributory copyright infringement should be dismissed due to insufficient factual allegations (Opp. 7–9). In particular, Facebook argues that the proposed complaint fails to sufficiently state a claim of *direct* infringement by a third party, which is a prerequisite for a claim of indirect copyright infringement to lie (*id.* at 2–6). *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for

5

United States District Court

For the Northern District of California

1  copyright infringement does not exist in the absence of direct infringement by a third party.").

2  Separately, the opposition argues that the proposed complaint fails to sufficiently state a claim for

3  contributory copyright infringement against Facebook.  Finally, Facebook argues that the

4  continued failure by plaintiff to locate and serve the summons and complaint on defendant Yeo

5  should be treated as separate and independent grounds for dismissing the entire action.  These

6  arguments are addressed in turn.

### A.   The Requirement of Direct Infringement

8       The prior order already found that plaintiff sufficiently stated a claim of direct

9  infringement against defendant Yeo (Dkt. No. 43 at 4–5).  Nevertheless, Facebook raises new

10 arguments in its opposition brief that direct infringement has not been shown.  To state a claim for

11 direct copyright infringement, plaintiff must satisfy two requirements: "(1) [plaintiff] must show

12 ownership of the allegedly infringed material and (2) [plaintiff] must demonstrate that the alleged

13 infringer(s) violated at least one exclusive right granted to copyright holders under 17 U.S.C. §

14 106." *Napster, Inc.*, 239 F.3d at 1013.  Facebook challenges only the latter requirement.

15 According to Facebook, while the proposed complaint alleges that defendant Yeo "reproduced,

16 distributed, and publicly displayed" the alleged infringing software program without plaintiff's

17 authorization (Compl. ¶ 42), the facts as pleaded do not support such allegations (Opp. 4–6).

18      This order agrees with Facebook in one respect: the proposed complaint fails to state a

19 claim for a violation of plaintiff's public display rights in Boomshine.  As defined by the

20 Copyright Act, "[a] 'computer program' is a set of statements or instructions to be used directly

21 or indirectly in a computer in order to bring about a certain result."  17 U.S.C. 101 (defining

22 terms).  In other words, copyright protection of a computer program is principally derived from

23 treating the underlying source code as a literary work.  *See ibid.*[2]  While the public display right

24 covers literary works, the proposed complaint contains no allegation that copies of the protected

25 work were ever publicly displayed within the meaning of the statute.  *See* 17 U.S.C. 106(5); *see*

---

27  [2]  This order acknowledges that particular types of software — such as video games
— may contain substantial creative and original pictorial or graphic authorship deserving of
28 separate and independent protection under the Copyright Act.  The copyright at issue here,
however, appears limited to the underlying source code of the Boomshine video game.  The
scope of protection given to copyrighted software is still a developing area of law.

United States District Court

For the Northern District of California

*also* 17 U.S.C. 101 ("To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process."); *ibid.* (defining "copies" as "material objects . . . in which a work is fixed . . . and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."). Stated differently, the proposed complaint does not allege that the literary work itself — meaning the source or machine code for Boomshine — was ever displayed publicly.

Moreover, this order emphasizes that plaintiff's copyright appears to be limited to the source code rather than the audiovisual aspects of Boomshine. Even assuming, however, that plaintiff's copyright encompassed the audio and visual elements of Boomshine (*e.g.*, the swirling colorful dots and sound effects), the "public display" right set forth in 17 U.S.C. 106(5) would only protect the display of non-sequential images of an audiovisual work. *See id.* at 63–64; 17 U.S.C. 106(5); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160–61 (9th Cir. 2007). Since the proposed complaint does not allege such a display, plaintiff has failed to state a plausible claim for a violation of his public display rights. At best, defendant Yeo's alleged publication of the ChainRxn video game for play by Facebook users constituted a public *performance* of plaintiff's copyrighted work under 17 U.S.C. 106(4). Just as Congress considered the "reading a literary work aloud" as a performance rather than display of a literary work, the reading of Boomshine's copyrighted source or machine code by a computer (resulting in the presentation of the video game to the user) could be seen as an analogous performance of the underlying work. *See* H.R. REP. NO. 94-1476, at 63 (1976). Admittedly, this area of the law is still developing.

With respect to plaintiff's exclusive distribution right in Boomshine, however, this order does *not* agree with Facebook that the proposed complaint fails to state a plausible claim of infringement by defendant Yeo (Opp. 5–6). Treating all factual allegations as true and drawing all reasonable inferences in plaintiff's favor, the proposed complaint sufficiently alleges that defendant Yeo published ChainRxn to a publicly accessible website where it was distributed to members of the public. As explained by the Ninth Circuit in *Perfect 10 v. Amazon.com*, content accessed by a user over the Internet is routinely stored locally on the user's computer in what is

7

called cache memory. *See* 508 F.3d at 712 n.3 (defining "cache" memory as "computer memory with very short access time used for storage of frequently or recently used instructions or data[]" and explaining that a user's personal computer "has an internal cache that saves copies of webpages and images that the user has recently viewed so that the user can more rapidly revisit these webpages and images."). It is a reasonable inference that the ChainRxn video game was distributed by defendant Yeo to members of the public through this routine "caching" process. In other words, it can be reasonably inferred that the ChainRxn video was downloaded from the computer where it was being hosted to the local cache memory of any Facebook user who played the ChainRxn video game.[3] Counsel for plaintiff argued this very point at the hearing. Given this reasonable assumption, the proposed complaint states a plausible claim of direct infringement by defendant Yeo of plaintiff's exclusive right to distribute the Boomshine video game to the public — assuming, of course, that ChainRxn is an unlawful "copy" of the protected Boomshine work. *See* 17 U.S.C. 106(3) (providing the copyright holder with the exclusive right to "distribute copies . . . to the public" of the protected work); *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 498 (2001) (holding that under the Copyright Act, "copies" may be distributed electronically).

Finally, defendant Facebook argues that because the proposed complaint fails to allege any direct infringement by defendant Yeo in the United States, it cannot be held contributorily liable (Opp. 6). This argument appears to be based on the currently unknown whereabouts of defendant Yeo and uncertainty behind where the ChainRxn video game is actually "hosted" (*i.e.* the physical location of the computer server from which it is distributed to the public). While it is true that the copyright laws "do not reach acts of infringement that take place entirely abroad," *see Subafilms v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994) (*en banc*), it would not be a reasonable inference at the pleading stage to conclude from the facts as alleged that the acts of unauthorized distribution of the ChainRxn video game to Facebook users occurred

---

[3] Even if this "caching" inference turns out to be untrue, the details behind most (if not all) of these highly technical questions are best known to Facebook. Indeed, ChainRxn was allegedly developed by defendant Yeo using the Facebook Developer Platform (Compl. ¶ 15). Plaintiff cannot be expected to know every last detail of whether copies of ChainRxn are cached locally on a user's computer when they are used or played — at least not at the pleading stage.

United States District Court
For the Northern District of California

entirely beyond our shores, even assuming defendant Yeo "reproduced" the game outside the United States. The importation of unauthorized copies of a copyrighted work constitutes an actionable violation of the copyright holder's distribution rights. *See* 17 U.S.C. 602.

Finally, on the issue of whether the proposed complaint plausibly alleges a violation of plaintiff's exclusive reproduction rights in Boomshine under 17 U.S.C. 106(1), counsel for Facebook argued at the hearing that the alleged copying of the "look and feel" of Boomshine does not sufficiently allege a violation of plaintiff's reproduction rights in Boomshine's source code. While this argument properly highlights an important distinction between a copyright over source code and a copyright over the original audiovisual aspects of a video game, this order finds that unlawful copying of plaintiff's copyright has been sufficiently alleged. Under these facts, it is a reasonable inference at the pleading stage that plaintiff's reproduction rights in Boomshine's source code have been violated due to the alleged similarities between the Boomshine and ChainRxn video games. One reason for this finding is because a plaintiff can rarely examine the underlying source code of an accused infringing software program without resorting to discovery.

In sum, direct infringement of plaintiff's copyright by defendant Yeo within the United States has been plausibly alleged in the proposed complaint.

### B.   Contributory Infringement Under *Napster*

With the predicate act of direct infringement sufficiently pleaded, this order now turns to the allegations of contributory copyright infringement. As explained in the prior order, a claim of indirect copyright infringement may proceed under two different theories: (1) contributory infringement and/or (2) vicarious infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007). In the proposed complaint, plaintiff's claim against defendant Facebook proceeds only under the former theory.

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).[4]

_____

[4] The Supreme Court also set forth a second test for contributory copyright infringement involving the distribution of a product not capable of "substantial" or "commercially significant" non-infringing uses. *See Grokster*, 545 U.S. at 942. The facts as alleged do not suggest or support a finding of liability under this alternative test.

United States District Court

For the Northern District of California

The Ninth Circuit interpreted this test to mean that "one contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement. *Perfect 10, Inc., v. Visa Int'l Service, Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). For "providers of Internet services," however, a more refined test applies. Citing its earlier holding in *Napster*, 239 F.3d at 1021, the Ninth Circuit in *Perfect 10 v. Amazon.com* explained that "if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement." 487 F.3d at 728.

This special test was formulated due to the concern that "services or products that facilitate access to websites throughout the world can significantly magnify the effects of otherwise immaterial infringing activities." *Ibid.* (citing *Napster*, 239 F.3d at 1022); *see also Grokster*, 545 U.S. at 929 (observing that "[t]he argument for imposing indirect liability" is particularly "powerful" when individuals using the defendant's software could make a huge number of infringing downloads every day). In other words, these decisions found that copyright holders could not adequately protect their rights in a meaningful way unless they could hold providers of such Internet-based services or products accountable for their actions pursuant to a test like the one set forth in *Napster*. As such, the Ninth Circuit in *Perfect 10 v. Amazon.com* concluded that "a computer system operator can be held contributorily liable if it 'has actual knowledge that specific infringing material is available using its system[]' . . . and can 'take simple measures to prevent further damage' to copyrighted works, . . . yet continues to provide access to infringing works." 487 F.3d at 729 (internal citations omitted). Note well that whether or not the accused material is actually hosted by the computer system operator is immaterial — merely "facilitat[ing] access to websites" with infringing material is sufficient for liability under this test.

In light of the *Napster* rule, the proposed complaint sufficiently states a claim of contributory copyright infringement against defendant Facebook. *First,* there is no question that Facebook provides Internet services to the public as a social networking website. *Second*, the proposed complaint clearly alleges that Facebook had actual knowledge that specific infringing

10

material was available using its system.  Plaintiff sent Facebook a letter on May 7, 2009, demanding that Facebook remove ChainRxn from its website because it violated plaintiff's copyright in Boomshine (Compl. ¶ 27).  *Third*, plaintiff makes clear that Facebook could have taken one or two simple measures to prevent further harm to his intellectual property rights after this notice was provided — namely, by either disabling defendant Yeo's Facebook account or by removing ChainRxn from the Facebook Application Directory (*id.* at ¶ 32).  *Fourth*, the proposed complaint alleges that despite this actual knowledge by Facebook and the availability of *two* simple measures to prevent further harm, Facebook continued to allow its users to search for and access the allegedly infringing work for some period of time thereafter (*id.* at ¶ 31).  *Fifth*, given the immense popularity of the Facebook website, it is a reasonable inference that the continued listing of ChainRxn in the Facebook Application Directory and the access provided to ChainRxn through the Facebook website had the effect of significantly magnifying what might otherwise have been immaterial infringing activities had the ChainRxn game not been part of the Facebook social network.  Given these allegations and inferences, the test set forth in *Napster* is appropriate under these circumstances, and plaintiff has sufficiently stated a claim of contributory infringement against defendant Facebook under this test.[5]

None of Facebook's arguments warrants a contrary conclusion.  In its opposition, Facebook concentrates its fire on whether the proposed complaint sufficiently remedied particular pleading deficiencies identified by the prior order.  Specifically, Facebook argues that the proposed complaint fails to plead any new facts regarding "what Facebook users are allowed to 'search and view' on the application directory" and "how the website that contains the ChainRxn game is connected to . . . Facebook" (Opp. 8–9).  While it is true that the undersigned identified these allegations as deficient in the prior order, counsel must keep in mind that these criticisms were made in response to sweeping claims of *direct* infringement and *induced* infringement that had been leveled against both Yeo and Facebook.  Both of these theories — which hinged upon whether Facebook "hosted" the infringing video game on its servers or had the right to control the

---

[5] Facebook, of course, may have a strong shield to this claim under the "safe harbor" provisions of the Digital Millennium Copyright Act.  As an affirmative defense, however, this is immaterial to whether plaintiff has sufficiently stated a claim.

United States District Court

For the Northern District of California

website upon which ChainRxn was stored — have been excised from the proposed complaint. The sole remaining claim against Facebook is contributory copyright infringement. As such, the proper inquiry is simply whether sufficient facts have been alleged to state a plausible claim for contributory infringement under the *Napster* test. This threshold has been met.

### C.   DEFENDANT YEO

Separate and aside from any alleged pleading deficiencies, Facebook asks the Court to dismiss the complaint due to plaintiff's failure to locate and serve defendant Yeo within 120 days after the complaint was filed (Opp. 9). FRCP 4(m). No extension of time to serve defendant Yeo has been sought by plaintiff.

While the absence of defendant Yeo from this action is not procedurally fatal to plaintiff's claims of contributory infringement against defendant Facebook moving forward, *see* 3-12 NIMMER ON COPYRIGHT § 12.04 (2010) ("[I]t is permissible for a plaintiff to name as a defendant solely a contributory infringer or one vicariously liable, such as in circumstances where the direct infringer is not subject to service of process or is unknown."), the lengthy delay in locating Mr. Yeo is troubling. The undersigned emphasized this point at the hearing.

Indeed, locating defendant Yeo appears *essential* to plaintiff's case, since a prerequisite to plaintiff's indirect infringement claim against Facebook is proof of *direct* infringement of plaintiff's copyright by a third party — in this case, Mr. Yeo. This will necessarily require proof that Mr. Yeo unlawfully "reproduced" the protected elements of Boomshine's source code to create the accused ChainRxn video game. Without Mr. Yeo in the case to provide testimony and the ChainRxn source code, however, it is unclear how plaintiff would be able to prove such unlawful copying.[6] Without such proof that ChainRxn is an unlawful "reproduction" of Boomshine, plaintiff's remaining claims all crumble.

---

[6] Even if Boomshine and ChainRxn appear visually identical, this does not mean that the underlying source code must also be identical. Moreover, even if portions of source code appear strikingly similar, this does not necessarily imply unlawful copying — two experienced software developers seeking to write elegant and efficient source code for a particular function might independently craft very similar work.

United States District Court

For the Northern District of California

For these reasons, if plaintiff fails to locate Mr. Yeo and file proof of service of the summons and complaint on him **BY JULY 30, 2010**, the Court will take immediate action to dismiss the case.

**CONCLUSION**

For the reasons set forth above, plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. While the proposed complaint fails to state a plausible claim of direct infringement of plaintiff's public display right pertaining to the Boomshine video game, the remaining claims against defendants Yeo and Facebook meet the minimum pleading requirements set forth in *Iqbal*.

Plaintiff shall file the amended complaint in conformity with the rulings herein **BY NOON ON FRIDAY, JUNE 4, 2010**. While plaintiff may not expand upon the legal claims asserted against defendants Yeo and Facebook in the proposed amended complaint, the various factual clarifications provided by plaintiff's counsel at the hearing — especially the allegations pertaining to how the ChainRxn game interfaces with the Facebook social network and how the game is distributed to users through the caching process — must be added to the amended complaint to provide as much factual detail as possible. These factual allegations should have been in the proposed complaint to begin with. Additionally, plaintiff shall clarify how and why the ChainRxn video game is an unlawful "copy" of plaintiff's copyright in Boomshine. Plaintiff shall ensure that these amendments are done properly, as no further opportunities to amend the complaint will be granted.

Finally, if plaintiff Yeo is not brought into this action **BY JULY 30, 2010**, evidenced by proof of service of the summons and complaint, the case will likely be dismissed.

**IT IS SO ORDERED.**

Dated: May 27, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

13