IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANIEL M. MILLER,

    Plaintiff,

  v.

FACEBOOK, INC. and YAO WEI YEO,

    Defendants.
                                     /

No. C 10-00264 WHA

**ORDER DENYING FACEBOOK'S SECOND MOTION TO DISMISS AND VACATING HEARING**

      In an order filed nearly two months ago, the undersigned held that the second amended complaint met "the minimum pleading requirements set forth in *Iqbal*" for plaintiff's allegations of direct and indirect copyright infringement against defendants Yao Wei Yeo and Facebook, Inc. (Dkt. No. 56). Despite this unambiguous ruling, Facebook — who stands accused of indirect infringement for the supposed role its popular social networking website played in this dispute — again moves to torpedo this action at the pleading stage. Facebook focuses its fire on the sufficiency of plaintiff's direct infringement claim against defendant Yao Wei Yeo, hoping that if it hits the mark, the indirect infringement claim will sink as well. As before, Facebook's argument fails.

      The key facts — as alleged — are as follows. Plaintiff Daniel Miller authored a video game called "Boomshine" in 2007. Written in Flash and played over the Internet, the game requires "players [to] click on a floating circle that causes the clicked circle to expand and causes other contacted floating circles to likewise expand in a chain reaction." Mr. Miller holds a

1 registered "computer file" copyright over this game. Sometime in 2009, defendant Yao Wei Yeo
2 — who has yet to appear in this action (a point that will be touched upon later) — supposedly
3 authored his own video game called "ChainRxn." It too is played over the Internet and involves
4 "players click[ing] on a floating circle that causes the clicked circle to expand and causes other
5 contacted floating circles to likewise expand in a chain reaction." According to plaintiff, it shares
6 the same "look and feel" of Boomshine, incorporating almost every visual element of the game.

7     Facebook's role in these accusations flows from its popular social networking website.
8 According to the complaint, ChainRxn is (or was) a Facebook software application — or "app "
9 — written using the Facebook Developer Platform, which is a set of programming tools
10 distributed by Facebook to encourage and enable third-party programmers to write software
11 applications that interact with the Facebook website. Once written and published, these apps
12 appear in Facebook's "Application Directory" for members to peruse. For a game like ChainRxn,
13 members can play the game and then challenge their "Facebook friends" to beat their high score.

14     The instant motion presents a narrow challenge. In short, Facebook argues that plaintiff
15 cannot state a plausible claim under *Iqbal* for direct copyright infringement based upon the
16 allegation that ChainRxn "looks and feels" identical to Boomshine. This attack is premised upon
17 the apparent fact that Boomshine was not registered with the Copyright Office as an
18 "audiovisual" work, but as a literary work (*i.e.*, only the source code was registered). Thus,
19 according to Facebook, the non-literal audiovisual elements of Boomshine are not protected by
20 plaintiff's copyright and, in any event, unlawful copying of the source code cannot be plausibly
21 inferred from the allegedly identical "look and feel" of the two software programs.

22     This order disagrees. *First*, as the prior order noted, "a plaintiff can rarely examine the
23 underlying source code of an accused infringing software program without resorting to discovery"
24 (Dkt. No. 56 at 9). As such, it would be unreasonable, if not impossible, for plaintiff to know
25 with exacting detail "how [defendant Yeo] copied [his] computer code" at the pleading stage
26 (Reply 1). All plaintiff knows — and could reasonably allege at this point — is that sometime
27 after he published his copyrighted video game over the Internet, a copycat version began making
28 the rounds on Facebook bearing all readily observable indicia of being copied. Under these facts,

a reasonable inference can be drawn that the underlying source code was copied: defendant Yeo had access to the protected work since it was published on the Internet, and the game he authored was supposedly *identical in every observable way* to plaintiff's game. If this inference is false, discovery will reveal the truth. Sunlight is, after all, the best of disinfectants.

*Second*, contrary to Facebook's representations, the prior order did not hold that copyright protection for source code was limited to the literal elements of the work. Rather, the prior order stated that "plaintiff's copyright appears to be limited to the source code rather than the audiovisual aspects of Boomshine" to set the proper *starting point* for the analysis — *i.e.*, whether plaintiff's work was to be analyzed as a literary work or an audiovisual work (Dkt. No. 56 at 9). It did not make any determination either way as to whether the various audiovisual aspects of the Boomshine software program — its "look and feel" — were unprotected.

In sum, there is no occasion to alter the May 2010 ruling that direct infringement against defendant Yeo has been sufficiently alleged. Facebook's motion is **DENIED**. The hearing on this motion is **VACATED**.

\*            \*            \*

As a final comment, plaintiff is reminded that the July 30 deadline to bring defendant Yeo into this action is rapidly approaching. In this connection, while plaintiff's opposition brief stated that "Yeo was effectively served with the [operative complaint] on July 8, 2010" (Opp. 6), there appears to be a bourgeoning dispute over whether this service was valid (Reply 7). Plaintiff is on notice of this potentially fatal defect, which the undersigned will not address until after the July 30 deadline has passed (and an appropriate motion is brought).

**IT IS SO ORDERED.**

Dated: July 23, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3